# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**OHIO COUNTY COMMISSION, et al.,**

        Plaintiffs,

    v.                                    **Civil Action No. 5:24-CV-142**
                                           Judge Bailey

**EXPRESS SCRIPTS, INC., et al.,**

        Defendants.

## ORDER

Pending before this Court is Defendants' Motion to Dismiss for Failure to State a Claim [Doc. 108], filed October 11, 2024. Plaintiffs filed a Response in Opposition [Doc. 131] on November 15, 2024. Defendants filed a Reply [Doc. 135] on December 6, 2024. By Order entered December 23, 2024, this Court granted in part and denied in part defendants' Motion to Dismiss. [Doc. 140]. At the request of defendants, this Court deferred ruling on plaintiffs' First Claim for Relief pending argument on the certified question in ***City of Huntington, W.Va. v. AmerisourceBergen Drug Corp***, 96 F.4th 642 (4th Cir. 2024). [Id. at 26].

By decision entered May 12, 2025, the Supreme Court of Appeals of West Virginia ("WVSCA") declined to answer the questions certified to it by the Fourth Circuit. Accordingly, the deferred portion of the Motion to Dismiss is now ripe for decision. ***City of Huntington v. AmerisourceBergen Drug Corp***., __ W.Va. __, 915 S.E.2d 828 (2025).

1

This Court is mindful that "[i]n the absence of such action by the highest state court in West Virginia, [this Court's] role in the exercise of diversity jurisdiction is limited.  A federal court acting under its diversity jurisdiction should respond conservatively when asked to discern governing principles of state law.  See **Day & Zimmermann, Inc. v. Challoner**, 423 U.S. 3, 4 (1975) (per curiam).  Therefore, in a diversity case, a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue.  See id." **Rhodes v. E.I. du Pont de Nemours & Co.**, 636 F.3d 88, 96 (4th Cir. 2011).

Sometimes, however where there is no WVSCA decision on point, the Court is called upon to make an "Erie-educated guess." **Phillips v. Glens Falls Ins. Co.**, 288 F.Supp. 151, 154 (S.D. W.Va. 1968) (Field, C.J.), aff'd, 409 F.2d 206 (4th Cir. 1969).  This is especially true when the WVSCA has declined the certified question.

In their Motion, defendants argue that the public nuisance claim is not cognizable under West Virginia law and that this Court cannot expand the tort.  In making this argument, defendants rely primarily on **City of Huntington v. AmerisourceBergen Drug Corp.**, 609 F.Supp.3d 408 (S.D. W.Va. 2022), in which Judge Faber found that the doctrine of public nuisance did not apply.

Of course, limiting the doctrine of public nuisance solely to damage to public property runs contrary to the WVSCA's prior decisions. In West Virginia, a public nuisance is "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." **State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.**, 200 W.Va. 221, 241, 488 S.E.2d 901, 921 (1997) (quoting **Sharon Steel Corp. v. City of**

2

*Fairmont*, 175 W.Va. 479, 483, 334 S.E.2d 616, 620 (1985) in turn quoting *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 595–96, 34 S.E.2d 348, 354 (1945)). "As suggested by this broad definition, nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Sharon Steel Corp.*, 175 W.Va. at 484, 334 S.E.2d at 621. See also *Weirton Area Water Bd. v. 3M Co.*, 2020 WL 7479974, at *6 (N.D. W.Va. Dec. 18, 2020) (Bailey, J.).

In the decision certifying the issue to the WVSCA, the Fourth Circuit noted:

> The Supreme Court of Appeals has not determined whether the common law of public nuisance may apply to conditions caused by distribution of a potentially dangerous product. Indeed, public nuisance cases in West Virginia traditionally have addressed hazards or inconveniences affecting property or resources. See *Sharon Steel Corp.*, 334 S.E.2d at 621 (collecting cases from 1878 to 1982); see also *Kermit*, 488 S.E.2d at 906 (public nuisance claim against lumber company that failed to eliminate hazardous waste resulting from its lumber treatment process). Nonetheless, we do not view as dispositive the fact that the Supreme Court of Appeals has not yet applied principles of public nuisance to the distribution of a product. And we hesitate to infer such limits on West Virginia's common law of public nuisance in light of the broad language used by the Supreme Court of Appeals in describing public nuisance claims, see *Sharon Steel*, 334 S.E.2d at 621, and in light of decisions by West Virginia trial courts holding that

common law claims of public nuisance are cognizable against distributors of opioids.

For example, in **State ex rel. Morrisey v. AmerisourceBergen Drug Corp.**, a West Virginia circuit court held that West Virginia had "sufficiently assert[ed]" a claim for public nuisance by "sufficiently alleg[ing that] the safety and health and morals of the people of West Virginia ha[d] been compromised due to Defendants' alleged wrongful influx of addictive, controlled substances into West Virginia, thereby causing substantial injury to West Virginia citizens and taxpayers." 2014 WL 12814021, at *10 (W.Va. Cir. Ct. Dec. 12, 2014), *writ denied*, No. 15-1026 (W.Va. Jan. 5, 2016). Similarly, in **Brooke County Commission v. Purdue Pharma L.P.**, a circuit court held that the common law of public nuisance is "not limited to property disputes," and that the distributor defendants had "interfered with a public right, including the public health." 2018 WL 11242293, at *1 (W.Va. Cir. Ct. Dec. 28, 2018), *writ denied*, No. 19-0210 (W.Va. June 4, 2019).[1]

---

[1] In both **Brooke County** and **Morrisey**, the Supreme Court of Appeals refused the defendants' petitions for a writ of prohibition following the trial courts' denials of their motions to dismiss. *See* W.Va. Code § 53-1-1; **Brooke Cnty.**, 2018 WL 11242293; **Morrisey**, 2014 WL 12814021.

The West Virginia Mass Litigation Panel (MLP)[2] also has concluded in multiple instances that the distribution of opioids can form the basis of a public nuisance claim under West Virginia common law. When considering a motion to dismiss filed by the same distributors in this case, the MLP denied the distributors' motion and "adopt[ed] and incorporate[d] by reference" the findings of fact and conclusions of law from *Brooke County*. *Order Denying the Distributor Defendants' Motion to Dismiss Plaintiffs' Complaint*, Civil Action No. 19-C-1900, at 3 (W.Va. MLP Oct. 31, 2019), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/OrderDenyingDistributorDefendantsMTD.pdf [https://perma.cc/2CHF-8CEK]. Moreover, after the district court issued its decision in the present case, the MLP stated that the district court's "placement of an artificial external constraint on the common law cause of action for public nuisance is inconsistent with the Supreme Court of Appeals' longstanding recognition that a public nuisance is any act or condition that 'operates to hurt or inconvenience an indefinite number of persons,' and that 'nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations.'" *Findings of Fact and*

---

[2] The MLP consists of seven active or senior status circuit court judges appointed by the Chief Justice, with the approval of the Supreme Court of Appeals. Mass Litigation Panel, Overview, available at https://www.courtswv.gov/lower-courts/mass-litigation-panel [https://perma.cc/PBT5-3KQS]. As of 2021, West Virginia cities, counties, hospitals, and the State had brought more than eighty lawsuits against manufacturers and distributors of opioids. *See State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 245 W.Va. 431, 859 S.E.2d 374, 378 (2021).

*Conclusions of Law on Order Denying Pharmacy Defendants' Motions to Dismiss Complaints and Amended Motions*, Civil Action No. 21-C-9000-PHARM, at 30 (W.Va. MLP Aug. 3, 2022) (citations omitted), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/8-3-22FOF-COLandOrderDenyingPharmacyMTDs.pdf [https://perma.cc/Y74N-W426]; *see also Findings of Fact and Conclusions of Law and Order Denying Defendants' Motion for Summary Judgment Re: "Factual Issue #2"*, Civil Action No. 21-C-9000 Distributor, at 1-6 (W.Va. MLP July 1, 2022) (holding that "West Virginia public nuisance law encompasses plaintiffs' opioid claims" against the distributor defendants), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/7-1-22OrderDenyingFactualIssue2.pdf  [https://perma.cc/PJ3Y-SR56]; *Amended Order Regarding Rulings Issued During March 25, 2022, Pretrial Conference*, Civil Action No. 21-C-9000 MFR, at 4 (W.Va. MLP May 23, 2022) (declining to follow the Oklahoma Supreme Court's ruling in **Hunter**), https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/5-23-22AmendedPretrialRulingsOrder21-C-9000MFR.pdf [https://perma.cc/5NK3-LXPV].

Finally, we do not think that the authorities cited by the defendants, namely, the Oklahoma Supreme Court's decision in [**State ex rel.**] **Hunter** [**v. Johnson & Johnson**], 499 P.3d 719 [Okla. 2021], and the Restatement (Third) of Torts, control the outcome of this case.  With regard to **Hunter**,

6

499 P.3d 719, decisions from other courts of last resort are "entitled to great respect" but are "not of controlling force or effect or binding in authority" upon the Supreme Court of Appeals. ***State v. Blatt***, 235 W.Va. 489, 774 S.E.2d 570, 579 (2015) (quoting ***Burless v. W. Va. Hosps., Inc.***, 215 W.Va. 765, 601 S.E.2d 85, 94 n.9 (2004)).

With regard to the Restatement (Third) of Torts, we observe that the Supreme Court of Appeals has not issued a decision directly addressing the Third Restatement's position on this issue. *Cf.* ***Duff*** [***v. Morgantown Energy Assocs. (M.E.A.)***], [187 W.Va. 712, 715, 421 S.E.2d, 253 256 (1992)] (relying on Restatement (Second) of Torts). Under "Liability for Economic Harm," section 8 of the Third Restatement addresses the potential liability of a defendant who creates a public nuisance "that results in economic loss to the plaintiff," and provides that suits seeking to recover for public nuisance against the makers of products "ha[ve] been rejected by most courts ... because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue." Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. g. But the plaintiffs here have abandoned their claim for "past damages for economic losses" against the defendants, and section 8 of the Third Restatement instructs readers to refer to the Restatement (Second) of Torts for a general discussion of public nuisance that extends beyond "liability for economic loss." Id. § 8. Moreover, the text of section 8 expressly outlines the limits of its application by acknowledging that it applies

to private suits, rather than to public nuisance claims brought by public officials. Id.

>  We thus recognize the potentially limited application of the Third Restatement to the present case. And, having reviewed principles of the common law of public nuisance as reflected in decisions by the Supreme Court of Appeals, as well as in trial court decisions in West Virginia addressing public nuisance claims against distributors of controlled substances, we conclude that no controlling appellate decision answers the question whether conditions caused by the distribution of a controlled substance can constitute a public nuisance under West Virginia common law and, if so, what the elements are of such a claim. *Cf. also* **State v. Myers**, 216 W.Va. 120, 602 S.E.2d 796, 802 n.10 (2004) (explaining that unless there is a "dearth" of published opinions on an issue, the Supreme Court of Appeals ordinarily does not cite unpublished decisions).

**City of Huntington, W.Va. v. AmerisourceBergen Drug Corp.**, 96 F.4th at 649–51 (footnotes omitted).

The Fourth Circuit also noted in the above case that in **Lemongello v. Will Co.**, 2003 WL 21488208, at *2 (W.Va. Cir. Ct. June 19, 2003), the court held "that West Virginia law does not limit claims of public nuisance to those dealing with real property. Further, although the Defendants argued the necessity of an unlawful act to sustain nuisance, this Court finds the same is not necessary to create a public nuisance." The **Lemongello**

8

decision was authored by then state judge now United States District Judge Irene C. Berger.

Judge Charles Breyer, in his opiate MDL, held:

> McKinsey contends that Plaintiffs have failed to allege interference "with a right common to the general public." Restatement (Second) of Torts § 821B(1).  In part, the thrust of this argument is that Plaintiffs have merely used the word "epidemic" to dress up a collection of individual harms, incurred as a result of the use of a lawful product, as a public nuisance.  In part, too, the argument is that nuisance doctrine cannot fly too close to products liability law or too far from property-based harms.  McKinsey worries, along with the Oklahoma Supreme Court and the Eighth Circuit, that if public nuisance claims like Plaintiffs' are recognized, "[n]uisance ... would become a monster that would devour in one gulp the entire law of tort[.]" ***State ex rel. Hunter v. Johnson & Johnson***, 499 P.3d 719, 726 (Okla. 2021) (quoting ***Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.***, 984 F.2d 915, 921 (8th Cir. 1993)).
>
> These arguments are ultimately unpersuasive. Plaintiffs have alleged an interference with a public right: the public's rights "to use and enjoy public spaces without fear, danger, harassment, theft, and without encountering filth, disease, and blight, and to be free from the deleterious health and safety effect of an illegal drug trade." Am. Compl. ¶ 517.  In other words, the nuisance allegations concern not just a collection of individual harms, but the consequences of McKinsey and its clients' alleged misconduct on "the public

health" and "the public safety." *See* Restatement (Second) of Torts § 821B. That is sufficient to describe interference with a public right. The Ninth Circuit recognized as much in *Ileto v. Glock Inc.*, 349 F.3d 1191, 1210–11 (9th Cir. 2003), where it considered comparable allegations. There, the plaintiffs alleged that gun manufacturers had undertaken to "market, distribute, promote, and sell firearms, a lethal product, with reckless disregard for human life and for the peace, tranquility, and economic wellbeing of the public," and that they had "knowingly created, facilitated, and maintained an over-saturated firearms market that makes firearms easily available to anyone intent on crime." *Id*. at 1198. These allegations were held to constitute a nuisance under California law. *See id.* at 1210–11.

Plaintiffs have alleged interference with a common right on a similar theory. The crucial fact is that the public nuisance allegations "do not concern the ... product itself, but rather the alleged consequence of [McKinsey and its clients'] conduct." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F.Supp.3d 552, 646 (N.D. Cal. 2020). In other words, the nuisance allegations are not that the product in question is defective. Rather, the allegations are that McKinsey conspired with its clients to aggressively and unlawfully increase opioid sales in a manner designed to foster an illegal secondary market in opioids and to profit from the abuse and diversion of the drugs. Such allegations adequately describe a substantial and unreasonable interference with the public health and the

public safety. This public nuisance theory is not novel, and has been recognized in cases involving opioids, electronic cigarettes marketed to children, guns, and lead paint. *See **City & Cnty. of San Francisco v. Purdue Pharma L.P.***, 620 F.Supp.3d 936, 946 (N.D. Cal. 2022) (discussing "The Opioid Epidemic's Interference with Public Rights in San Francisco"); ***In re Nat'l Prescription Opiate Litig.***, 622 F.Supp.3d 584, 598–600 (N.D. Ohio 2022) (recognizing opioid-related injuries to public health as public nuisance under Ohio law); ***In re JUUL Labs***, 497 F.Supp.3d at 646–47 (denying motion to dismiss public nuisance claims under laws of Arizona, California, Florida, Pennsylvania, and New York); ***People v. ConAgra Grocery Prod. Co.***, 17 Cal. App. 5th 51, 112 (2017) ("Interior residential lead paint that is in a dangerous condition does not merely pose a risk of private harm in private residences. The community has a collective social interest in the safety of children in residential housing. Interior residential lead paint interferes with the community's 'public right' to housing that does not poison children. This interference seriously threatens to cause grave harm to the physical health of the community's children."); *see also **Cincinnati v. Beretta U.S.A. Corp.***, 768 N.E.2d 1136, 1145 (Ohio 2002) (recognizing public nuisance cause of action against gun manufacturers). Each of these cases involved a legal, regulated product, which nevertheless was promoted or distributed in such a way as to give rise to conditions constituting a public nuisance. Rather than "devour[ing] in one gulp the

11

entire law of tort," **Hunter**, 499 P.3d at 726, public nuisance law has continued to coexist peaceably alongside other tort causes of action in places like California and Ohio, which have recognized public nuisance actions of this general form for some time. Nor is it the case that every products liability case can be transformed into a public nuisance theory. For one thing, the latter requires a "substantial" and "unreasonable" interference with a public right, requirements not found in products liability law.

The authorities are, of course, not uniformly in agreement that the public nuisance doctrine does or should apply to cases like this one. The Supreme Court of Oklahoma has declined to apply public nuisance doctrine to the opioid crisis. See **Hunter**, 499 P.3d at 729–30 (reasoning that "[e]xtending public nuisance law to the manufacturing, marketing, and selling of products—in this case, opioids—would allow consumers to 'convert almost every products liability action into a [public] nuisance claim'" and holding that Oklahoma public nuisance law does not recognize the marketing of opioids as a public nuisance). A federal district court held that West Virginia law could not support a public nuisance claim against opioid distributors. See **City of Huntington v. AmerisourceBergen Drug Corp.**, 609 F.Supp.3d 408, 472–75 (S.D. W.Va. 2022) [(Faber, J.)]. But while the **Hunter** decision forecloses Plaintiffs' nuisance-based causes of action in Oklahoma, McKinsey has not shown that the other relevant states would not recognize Plaintiffs' claims.

Nor does the fact that courts in those states have not already extended public nuisance doctrine to the opioid crisis does not in itself suggest that they would not do so, especially in the absence of any persuasive state authority to the contrary. *See In re JUUL Labs*, 497 F.Supp.3d at 647. Oklahoma aside, each of the relevant states recognizes public nuisances based on an interference with the health or safety of the public. Even in West Virginia, despite the decision in *City of Huntington*, the law is unsettled. As Judge Polster has noted, "**every West Virginia state court that has addressed identical public nuisance claims against opioid defendants has come to a different conclusion than Judge Faber on the scope and contours of West Virginia public nuisance law.**" *In re Nat'l Prescription Opiate Litig.*, 622 F.Supp.3d 584, 600 n.20 (N.D. Ohio 2022) (emphasis added). *City of Huntington* is currently on appeal to the Fourth Circuit, which recently certified a question to the West Virginia Supreme Court regarding the application of public nuisance doctrine to the case. The certification order reflects doubt about the district court's narrow view of West Virginia nuisance doctrine. *See City of Huntington v. AmerisourceBergen Drug Corp.*, 2024 WL 1145974, at *5 (4th Cir. Mar. 18, 2024) ("[W]e do not view as dispositive the fact that the Supreme Court of Appeals has not yet applied principles of public nuisance to the distribution of a product. And we hesitate to infer such limits on West Virginia's common law of public nuisance in light of the broad language used by the Supreme

> Court of Appeals in describing public nuisance claims ... and in light of decisions by West Virginia trial courts holding that common law claims of public nuisance are cognizable against distributors of opioids.") (citation omitted).  **The Court will not dismiss the West Virginia nuisance claims on these grounds.**

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*, 2024 WL 2261926, at *8–9 (N.D. Cal. May 16, 2024) (footnotes omitted) (emphasis added).

Finally, this Court is of the opinion that the WVSCA's declination of the certified questions is not without relevance.  In its opinion, the WVSCA stated that inasmuch as many of the factual findings made by the trial judge were disputed and because those findings underlie the consideration of the certified questions and are essential to addressing the issues presented, the WVSCA declined to address the certified questions.

Of course, the case underlying the certified questions had been tried and was on appeal.  In the present case, the Motion is a 12(b)(6) motion to dismiss.  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

If, as defendants argue, an action against defendants for the damage caused by the opiate epidemic under the doctrine of public nuisance is categorically banned, there would be no reason to consider the underlying facts.  The fact that the Court felt that it needed

the underlying facts is evidence that such a claim may be brought under the doctrine of public nuisance.

For the reasons stated above, Defendants' Motion to Dismiss for Failure to State a Claim [**Doc. 108**] is **DENIED** as it pertains to plaintiffs' public nuisance claim.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: July 23, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE