**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

Ohio County Commission, *et al.*,

               Plaintiffs,

v.

Express Scripts, Inc., *et al.*,

               Defendants.

Case No.: 5:24-CV-142-JPB

Honorable John Preston Bailey

**MEMORANDUM OF LAW SUPPORTING EXPRESS SCRIPTS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE TO CERTIFY FOR INTERLOCUTORY REVIEW**

## INTRODUCTION

Plaintiffs—a collection of 120 of the nearly 300 municipalities in West Virginia—assert claims for public nuisance, negligence, civil conspiracy, unjust enrichment, and civil RICO, alleging that Express Scripts[1] is liable for contributing to an "oversupply" of prescription opioids in their respective communities. For relief, they seek (among other things) damages and other monetary relief to combat alleged harms from third parties' misuse of prescription opioids.

On August 4, the Court ordered an expedited two-phase "Bench Trial" on public-nuisance liability and "severed from this trial," but did not dismiss, all other claims. ECF No. 192 at 1–2 (**Order**). The result is two independent violations of Express Scripts' Seventh Amendment right to trial by jury: a bench trial on legal issues (such as whether Express Scripts is liable for public-nuisance claims for which Plaintiffs seek monetary relief), with additional legal claims (such as negligence and RICO claims) that have overlapping factual issues waiting in the wings.

The Order also states that the trial will concern *statewide* liability (whether Express Scripts "caused the alleged oversupply and diversion of opioids throughout West Virginia") and *statewide* relief ("statewide abatement trial"). Order 1–2. But the State of West Virginia is not a plaintiff in this litigation,[2] and the 120 distinct plaintiffs have pleaded and sought relief only for alleged public nuisances in each of their individual communities, not statewide. By setting a trial that would adjudicate liability and potential relief beyond the parties, the Order runs afoul of limits on the

---

[1] In this motion, "Express Scripts" refers to all the remaining Express Scripts, Evernorth, and Medco entities named as defendants in this case.

[2] On August 15, 2025, West Virginia Attorney General John B. McCuskey filed a separate lawsuit on behalf of the State. *See State of West Virginia ex rel. McCuskey v. Evernorth Health, Inc., et al.*, No. 5:25-cv-00182-JPB (N.D.W. Va.). That the State has filed its own lawsuit confirms that these Plaintiffs do not represent the State and that a statewide trial in this case is inappropriate. In light of the Attorney General's lawsuit, Express Scripts anticipates filing a motion for a status conference to address case management and scheduling issues across all the related matters, and potentially seeking a stay of certain proceedings.

judicial power, including the Supreme Court's recent admonition that courts must limit relief to the parties. In effect, the Order wrongly treats this case as a de facto class action, even though Plaintiffs never pleaded nor sought class certification.

On top of that, the Order renders it impossible for Express Scripts to conduct even the most basic discovery necessary to prepare for trial. The Order limits Express Scripts to 20 depositions, which means that Express Scripts cannot depose the vast majority of the 120 separate plaintiffs and 90 third parties identified in Express Scripts' notices of non-party fault, let alone depose multiple witnesses from these parties. In the opioid multi-district litigation, 20 or more depositions is standard for cases involving a *single* plaintiff. And in stark contrast to the unfair limits placed on Express Scripts, the Order allows Plaintiffs to cross-notice all the depositions that have been, or will be, taken of Express Scripts in other opioids cases, of which there have already been dozens and could be dozens more. The Order thus establishes an uneven playing field that allows Plaintiffs, but not Express Scripts, to take meaningful discovery for trial.

These deficiencies are compounded by the Court's resolution of complex constitutional and procedural questions without the benefit of full briefing and without explaining the legal basis for its determinations. This lack of reasoned analysis on fundamental issues—including why Express Scripts has no jury trial right and why Express Scripts' discovery should be severely limited—demonstrates that reconsideration is warranted.

The Court should thus reconsider the Order because it (1) would violate Express Scripts' Seventh Amendment jury trial right; (2) improperly sets a statewide trial when there are no statewide plaintiffs or certified classes, in violation of Article III and other limits on judicial power; and (3) creates manifest injustice by depriving Express Scripts of the opportunity to conduct

complete discovery of Plaintiffs' individualized claims. Alternatively, Express Scripts asks the Court to certify the Order for interlocutory review by the Fourth Circuit under 28 U.S.C. §1292(b).

## BACKGROUND

On July 25, 2024, ten municipal entities in West Virginia filed an initial action, asserting claims for common law public nuisance, violations of the federal civil RICO statute, negligence, civil conspiracy, and unjust enrichment against various defendants, including Express Scripts. ECF No. 1. Plaintiffs later amended their complaint to add 66 additional West Virginia municipalities as plaintiffs, ECF No. 18, and then filed a second amended complaint on November 14, 2024, which added the City of Charleston, West Virginia, as the seventy-seventh plaintiff. ECF No. 128 (**Second Amended Complaint** or **SAC**). On May 21, 2025, Express Scripts filed its answer, including a demand for a jury trial on all issues so triable. ECF No. 173.

That same day, the Court ordered the parties to "submit to this Court a written report on the results of the initial discovery meeting and a completed Scheduling Order Checklist . . . ." ECF No. 172 at 1. On July 11, the Parties submitted their Joint Status Report and Proposed Discovery Plan, which included competing proposals: Plaintiffs sought an unprecedented procedure in federal court to consolidate all individual plaintiffs into a single, statewide trial, while Express Scripts proposed a well-established bellwether trial process, as used in twenty-two tracks of the federal opioid multi-district litigation (**MDL**). ECF No. 183 at 2–3. Plaintiffs noted that "the decision on jury or bench trial should be made following rulings on the pending motion to dismiss the public-nuisance claim and anticipated motions for summary judgement." *Id.* at 18.

On July 23, the City of Wellsburg, West Virginia, and 42 other municipalities, represented by the same Plaintiffs' counsel, filed a nearly identical complaint to the SAC. *See City of Wellsburg v. Express Scripts, Inc. et al*, No. 5:25-cv-00164-JPB, ECF No. 2. The *Wellsburg* complaint pleads the same claims as the *Ohio County* complaint: common law public nuisance, violations of the

federal civil RICO statute,[3] negligence, civil conspiracy, and unjust enrichment. *See id.* The time has not yet come for Express Scripts to answer or otherwise respond to the *Wellsburg* complaint, but when it does, Express Scripts will demand a jury trial on all triable issues, just as in *Ohio County*.

On July 28, the Court held a hearing on the Joint Status Report and Proposed Discovery Plan (the **Hearing**). At the Hearing, and in contradiction to Plaintiffs' statement in the Joint Status Report, Plaintiffs' counsel proposed that the action should be tried as a bench trial, beginning with a Phase I bench trial on statewide public-nuisance liability. Hearing Tr., ECF No. 189 at 4:15–17. Plaintiffs likewise asserted for the first time that they "represent the same human lives that the Attorney General would be representing," even though the State of West Virginia is not a party and Plaintiffs lack standing to sue on behalf of the State. *Id.* at 15:6–7.

On August 4, without the benefit of briefing on multiple complex legal issues, the Court entered the Order, which *sua sponte* consolidated *City of Wellsburg* with this case, "severed" the causes of action other than public nuisance, and ordered an expedited two-phase statewide public-nuisance bench trial. ECF No. 192. The Order noted that "General causation will be addressed in the Phase I trial of liability for public nuisance against the Defendants," with the issues to be considered including: (1) "Whether the Defendants engaged in wrongful conduct which caused the alleged oversupply and diversion of [opioids] *throughout West Virginia*;" and (2) "Whether the alleged oversupply and diversion of [opioids] *throughout West Virginia* is a public nuisance, which

---

[3] *City of Wellsburg* pleads a RICO claim, although the Court previously dismissed, at least in part, the RICO claim in *Ohio County*. Specifically, the Court dismissed Plaintiffs' RICO claim "to the extent that it seeks injunctive relief." ECF No. 140 at 15, 53. The Court appeared to treat that as dismissal of the entire RICO claim, as it elsewhere stated that it "is dismissing the RICO claim in the Second Amended Complaint," *id.* at 52, and it noted, but did not address or reject, Defendants' alternative arguments for dismissing the RICO claim, *id.* at 9–10.

is broadly defined as an unreasonable interference with a right common to the general public's health and safety." Order 1–2 (emphasis added). The Court further noted that "if one (1) or more Defendants are found to be liable in Phase I, this Court will then set an expedited bench trial on causation and abatement. The Court intends to hear evidence on a single, statewide abatement remedy and will consider allocation of fault amongst those Defendants found liable for purposes of inchoate contribution." Order 2. The Order also established deposition limits and set a case schedule. The Court granted Plaintiffs five depositions of non-expert witnesses, noting that "any cross-noticed depositions will not count against Plaintiffs' deposition limit" and limited Express Scripts to 20 non-expert depositions across all 120 plaintiffs. Order 3.

## LEGAL STANDARD

A motion for reconsideration on an interlocutory order is properly brought under Rule 54(b), which provides that such orders may be revised at any time before the entry of a judgment. *See Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D.W. Va. 1998). In addressing such motions, courts often follow the general principles of Rule 59(e), which permits reconsideration when the moving party demonstrates (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *See id.* (finding that "the Court is guided by the general principles of Rules 59(e) . . . ."); *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020).

## ARGUMENT

## I.    A BENCH TRIAL CLEARLY VIOLATES EXPRESS SCRIPTS' RIGHT TO A JURY TRIAL UNDER THE SEVENTH AMENDMENT.

The Order commits clear error by mandating a bench trial on public-nuisance claims that seek monetary damages and by severing but not dismissing legal claims that share common issues. These errors infringe on Express Scripts' right to a jury trial under the Seventh Amendment.

## A.    The Seventh Amendment Provides A Right To A Jury Trial For Plaintiffs' Public-Nuisance Claims.

The Seventh Amendment guarantees "the right of trial by jury" in suits "at common law." U.S. Const. amend. VII. Courts apply a two-step analysis to determine whether a particular cause of action is "legal"—as opposed to equitable—"in nature" and thus subject to the Seventh Amendment jury trial right. *SEC v. Jarkesy*, 603 U.S. 109, 122–23 (2024) (citation omitted). "First, [the court should] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the court should] examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (citation omitted). "The second stage of this analysis is more important," *id.*, because "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction," *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 n.1 (2002). Here, both steps confirm that the Seventh Amendment applies to Plaintiffs' public-nuisance claims.

***First***, public nuisance was historically within the jurisdiction of courts of law. At common law, "[a] public nuisance [was] subject to criminal jurisdiction, [where] the ordinary and regular proceeding at law is by indictment or information, by which the nuisance may be abated . . . ." *Mayor of City of Georgetown v. Alexandria Canal Co.*, 37 U.S. 91, 97–98 (1838); *accord Woods v. Cottrell*, 47 S.E. 275, 277 (W. Va. 1904) ("It is law very ancient that upon an indictment for maintaining a public nuisance . . . the offender be punished . . . ."); *Harris v. Poulton*, 127 S.E. 647, 650–51 (W. Va. 1925) ("Public nuisances are indictable. Private nuisances are actionable, either for their abatement, or for damages, or both.") (citation omitted). Courts of equity historically had "no jurisdiction in criminal matters [and] steered very clear of the field of crime [because] there was to be no criminal equity." *In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 323 n.14 (4th Cir. 2024).

***Second***, step two of the analysis—the relief sought—confirms a jury right applies here. Plaintiffs allege "damages to their property and resources," SAC ¶ 903, and expressly seek "all legal . . . relief as allowed by law . . . including . . . compensatory and exemplary/punitive damages, and all other damages allowed by law." SAC ¶ 922. "Money damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993); *see Jarkesy*, 603 U.S. at 123 ("[M]oney damages are the prototypical common law remedy."). Plaintiffs' request for damages is "all but dispositive," *Jarkesy*, 603 U.S. at 123; it categorically triggers Defendants' Seventh Amendment right to a jury trial, notwithstanding that Plaintiffs also seek other relief. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) ("In the Federal courts this (jury) right cannot . . . be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action.") (citation omitted); *FDIC v. Marine Midland Realty Credit Corp.*, 17 F.3d 715, 721 (4th Cir. 1994) (where plaintiff's claim "also requests monetary relief" it is "clearly requesting a legal remedy" and therefore "presents a claim which is unquestionably legal").

Plaintiffs also readily admit that their request for abatement relief seeks to impose monetary liability on Express Scripts. *See, e.g.*, SAC ¶ 911 (Plaintiffs "seek a judgment that the PBM Defendants *fund the abatement* of the ongoing public nuisance") (emphasis added); SAC ¶ 912 ("PBM Defendants should *compensate Plaintiffs for the funds they have expended and continue to expend* for increased costs of, inter alia, social services, health systems, law enforcement, judicial system, and treatment facilities.") (emphasis added). Although a suit to abate a public nuisance through injunctive relief *alone* may be equitable in nature, *Tull v. United States*, 481 U.S. 412, 423–24 (1987), Plaintiffs expressly seek monetary relief as part of the purported abatement remedy, and "suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are

suits for 'money damages,'" *Great-West Life*, 534 U.S. at 210 (cleaned up); *see also Granfinanciera*, 492 U.S. at 49 n.7 ("[A]ny distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of petitioners' Seventh Amendment claim."). Thus, "[a]lthough they often dance around the word, what [Plaintiffs] in fact seek is nothing other than compensatory *damages*—monetary relief for all losses . . . sustained . . . ." *Mertens*, 508 U.S. at 255. That relief is legal in nature and therefore subject to the Seventh Amendment jury requirement.

Courts in similar opioids cases have required jury trials for public-nuisance claims. New York courts have ruled such claims are legal, warning against artful pleading to evade juries. *See* **Exhibit A** (*In re Opioid Litigation*, No. 400000/2017, NYSCEF No. 6522 at 2–3 (Sup. Ct. New York, May 19, 2020)). Similarly, in the federal MDL, the court ordered public-nuisance liability to be determined by a jury because English precedent prior to the merger of law and equity "demonstrate that, historically, nuisance actions had a legal component," and "[t]reatises of the time instructed that 'the question of nuisance or not must, in cases of doubt, be tried by a jury.'" *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4621690, at *2 (N.D. Ohio Sept. 24, 2019) (citation omitted). Accordingly, the Court should reconsider the clear error of setting a bench trial on the public-nuisance claim for monetary relief and should instead order a jury trial.

**B.     The Seventh Amendment Requires A Jury Trial On Factual Issues Common To Plaintiffs' Other Legal Claims Before Adjudication Of Equitable Claims.**

No matter how the public-nuisance claims are characterized, the Seventh Amendment applies to Plaintiffs' negligence, civil RICO, and civil-conspiracy claims. *See Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (negligence); *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 871 (S.D. Ohio 2020) (civil RICO); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4621690, at *4 (civil conspiracy). When a civil action includes both equitable and legal claims,

8

"district courts should structure their order of operations to preserve the jury trial right" by ensuring that a jury decides any common factual issues *before* the court adjudicate the equitable claims. *Perttu v. Richards*, 605 U.S. 460, 471 (2025); *see Beacon Theatres*, 359 U.S. at 509–11.[4]

Under those principles, this Court's decision to prioritize "equitable claims first" while severing Plaintiffs' pending legal claims is "not permissible." *Perttu*, 605 U.S. at 471 (citations omitted). As Judge Polster recognized in the federal MDL involving materially similar claims:

> "the great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO . . . and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims. For example: (i) facts regarding the existence of conditions that generated the alleged extraordinary municipal costs (e.g., the alleged fraudulent marketing practices, inadequate diversion controls, and oversupply of opioids into the Plaintiff Counties) are also relevant to determining the conditions constituting the alleged nuisance; (ii) facts relating to alleged intentional or unlawful conduct resulting in liability under the legal claims also inform the decision as to whether that conduct unreasonably interferes with a commonly-held public right; and (iii) determining whether a causal link is established between the alleged conduct and injury will involve facts common to all of plaintiffs' claims."

*In re Nat'l Prescription Opiate Litig.*, 2019 WL 4621690, at *3.

Courts across the country, including in West Virginia, have consistently recognized that the Order's approach—to proceed directly to a bench trial despite pending legal claims— impermissibly contravenes the defendant's jury trial rights and invites reversible error. In a case against prescription opioid distributors, the Supreme Court of Appeals of West Virginia held that the trial court erred in first scheduling the bench trial of an equitable public-nuisance claim, while reserving for a later jury trial the legal claims with common issues. The court emphasized that this approach risked violating defendants' jury trial rights and warranted extraordinary relief. *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 859 S.E.2d 374, 388 (W. Va. 2021); *see also Barton*

---

[4] Although Plaintiffs offered at the Hearing to dismiss all claims other than public nuisance (Hr'g Tr. 24:3–10), they ultimately declined to do so unless and until the Fourth Circuit determines the viability of their public-nuisance claim under West Virginia law. *See* **Exhibit B**.

*v. Constellium Rolled Products-Ravenswood, LLC*, 2014 WL 3696646, at *4 (S.D. W. Va. July 23, 2014) ("A party making a legal claim for monetary damages does not lose its constitutional right to a jury trial because the claim is related to a request for injunctive relief.").

Accordingly, the Court should reconsider the clear error of setting a bench trial while Plaintiffs maintain other legal claims for later resolution.

## II.    A STATEWIDE TRIAL CLEARLY VIOLATES JUDICIAL LIMITS.

The Court separately exceeded its authority, and thus committed clear error, in ordering a statewide trial. Under both Article III of the Constitution and applicable state law, Plaintiffs lack standing to assert public-nuisance claims on behalf of the State and its residents. The Court likewise lacks authority to order relief for these Plaintiffs on a statewide basis—at least absent a statewide class action, which Plaintiffs have not attempted to pursue and for which they could not obtain certification under Rule 23. The Court should accordingly reconsider its order of a statewide trial and instead limit the scope of the trial to the claims validly asserted by the parties.

### A.    Plaintiffs Lack Standing to Assert Claims on Behalf of the State and Its Citizens.

Plaintiffs lack Article III standing to sue on behalf of the entire State of West Virginia, and this Court therefore lacks judicial authority to hold a statewide trial. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (Article III standing "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood.").

At the Hearing, Plaintiffs repeatedly represented to the Court that "this is a public nuisance case on behalf of the general public. This isn't [a] . . . case for a special injury for [individual Plaintiffs'] expenditures." (Hr'g Tr. 9:20–23). And Plaintiffs asserted that they seek to "represent the same human lives that the Attorney General would be representing." (Hr'g Tr. 15:6–11). In other words, Plaintiffs seek to act as parens patriae for West Virginia and its citizenry. *See City of*

*N. Miami v. FAA*, 47 F.4th 1257, 1277 (11th Cir. 2022) ("By invoking the interests of their residents, the municipalities are attempting to sue . . . under a parens patriae theory.").

"[P]*arens patriae* is a standing doctrine under which *a state* may under proper circumstances sue on behalf of its citizens when a separate quasi-sovereign interest also is at stake." *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997) (emphasis added). But the doctrine does not confer standing upon *a state* to represent the interests of its citizens unless there is "an independent *state sovereign interest* at stake." *Id.* (emphases added). And the doctrine "does not extend to subordinate governmental units, like counties or cities, to sue to vindicate the rights of their residents." *City of Chicago v. Marriott Int'l, Inc.*, 2019 WL 6829101, at *3 (D. Md. Dec. 13, 2019). "The power of a political subdivision of a state is 'derivative and not sovereign,' and it may only sue to vindicate its own interests." *Prince George's County, Md. v. Levi*, 79 F.R.D. 1, 3–4 (D. Md. 1977). Courts in this Circuit, and across the country, regularly hold that cities and counties lack constitutional standing to assert claims on behalf of their residents—let alone all the residents of the states in which they are located, as Plaintiffs seek to do here. *E.g.*, *Prince George's County*, 79 F.R.D. at 3–4; *Bd. of Sup'rs of Fairfax County, Virginia v. United States*, 408 F. Supp. 556, 566 (E.D. Va. 1976); *Warren County v. State of N.C.*, 528 F. Supp. 276, 282–83 (E.D.N.C. 1981); *Bd. of Sup'rs of Warren County v. Virginia Dep't of Soc. Servs.*, 731 F. Supp. 735, 741 (W.D. Va. 1990); *Chicago*, 2019 WL 6829101, at *3; *accord El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044 (9th Cir. 1979).

Independently, Plaintiffs lack capacity under West Virginia law to assert statewide public-nuisance claims. *State v. Ehrlick*, 64 S.E. 935 (W. Va. 1909), is on point. In that case, a county prosecutor filed a civil action seeking to enjoin "the keeping and conducting of a gaming house, constituting a public nuisance." *Id.* at 936. The Supreme Court of Appeals rejected the county

11

prosecutor's claim and held that the Attorney General has exclusive authority to assert civil claims for public nuisance in the name of the State and its citizens. *Id.* at 937. The court explained that the Attorney General occupies a "separate and distinct" office and is vested with "certain powers" and "certain duties" over which he or she must have "exclusive control." *Id.* at 936. The court warned that "[t]here would be no individual responsibility, if the powers of the Attorney General and [a county] prosecuting attorney were coextensive and concurrent. . . . Concurrence would produce interference, conflict, and friction in many instances, delaying the disposition of business to the detriment of the state." *Id.* at 936–37.

In recent years, the Supreme Court of Appeals has reaffirmed *Ehrlick*: "only the Attorney General ha[s] authority to bring the civil petition in the name of the State." *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 642 (W. Va. 2013). "*Ehrlick* stands for the proposition that the office of attorney general . . . [is] independent and distinct," and a municipal official "cannot invade the duties of the Attorney General." *State ex rel. Morrisey v. W. Virginia Off. of Disciplinary Couns.*, 764 S.E.2d 769, 789 (W. Va. 2014) (citation omitted). "As the chief law officer of the state, the Attorney General is clothed and charged with all the common-law powers and duties pertaining to his office," and local officials have "no such power or authority, respecting the prosecution of civil proceedings on the part of the state, beyond that expressly conferred by statute." *Id.* Plaintiffs identify no statute authorizing them to sue for the State of West Virginia. The fact that the Attorney General recently filed its own separate case on behalf of West Virginia confirms that these Plaintiffs do not represent the State of West Virginia. *See State of West Virginia ex rel. McCuskey v. Evernorth Health, Inc., et al.*, No. 5:25-cv-00182-JPB (N.D.W. Va.).

Contrary to established law, Plaintiffs claim to "represent the same human lives that the Attorney General would be representing" (Hr'g Tr. 15:6–11), and their counsel claim to be capable

12

of "represent[ing] the state through the counties and cities, without the Attorney General." (Hr'g Tr. 17:8–16). But Plaintiffs "must rest upon [their] own injur[ies]—not [their] residents' injuries," let alone those of residents in other municipalities that have not sued. *Chicago*, 2019 WL 6829101, at *3. By implicitly endorsing Plaintiffs' contrary view and ordering "statewide" proceedings, the Order exceeds the Court's authority under Article III.

### B.   The Court Lacks Authority to Issue Statewide Relief.

Federal courts are constrained by Article III of the Constitution and the Judiciary Act of 1789 to adjudicating only those cases properly before them and to granting relief solely to the parties to such cases. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025) ("It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it.") (citation omitted); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 384 (2024) ("Article III of the Constitution assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies'—concrete disputes with consequences for the parties involved.").

Throughout the SAC, Plaintiffs allege particularized injuries to their communities, not a statewide nuisance or statewide injury. For example, they allege that "***the Plaintiffs' Communities*** were being flooded with an oversupply of these dangerous drugs," SAC ¶ 495 (emphasis added), and they seek relief for the public nuisance that Defendants allegedly "created, contributed to, and/or maintained ***in Plaintiffs' Communities***." SAC ¶ 910 (emphasis added). Plaintiffs do not allege that they seek to represent all individuals within West Virginia. In fact, Plaintiffs expressly disclaim that they are seeking to proceed in a derivative fashion on behalf of others. *See, e.g.*, SAC ¶ 909 ("Plaintiffs are asserting their own rights and interests and Plaintiffs' claims are not based upon or derivative of the rights of others."); SAC ¶ 914 ("Plaintiffs are acting in their governmental capacity to vindicate the rights of the public and abate a public nuisance ***within their***

*communities*.") (emphasis added). Because Plaintiffs have alleged injuries to their communities, rather than any statewide harm, a statewide trial would exceed the proper scope of adjudication. *See, e.g.*, *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (rejecting plaintiffs' claim of "statewide injury" and cautioning "that 'standing is not dispensed in gross': A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Plaintiffs do not, and cannot, allege harm on behalf of the entire state, and the Court thus cannot grant statewide relief. *See CASA*, 145 S. Ct. at 2552.

The Court's reliance on federal and state MDL precedent to justify statewide proceedings fundamentally mischaracterizes those proceedings and misapplies governing law. Order 2. The federal MDL court never conducted a statewide liability trial; rather, it employed traditional bellwether trials focused on individual plaintiffs' specific claims—an approach that differs fundamentally from the sweeping statewide adjudication ordered here. And the state MDL proceedings have no relevance because federal procedural law, not state law, governs proceedings in federal court. *See Hanna v. Plumer*, 380 U.S. 460 (1965); *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("standing in federal court is a question of federal law, not state law").

## C.    The Order Improperly Treats This Case As A De Facto Class Action.

The statewide trial structure also treats this case as if it were a class action in which the particular Plaintiffs in this case can act on behalf of everyone in West Virginia. Yet Plaintiffs neither pleaded nor moved for class certification, and the Court has not certified a class under Federal Rule of Civil Procedure 23. It is accordingly clear error to treat this case as if it were a class action. *See CASA*, 145 S. Ct. at 2555 ("A properly conducted class action . . . can come about in federal courts in just one way—through the procedure set out in Rule 23.") (citation omitted). By "forging a shortcut to relief that benefits parties and nonparties alike," the Order "circumvent[s] Rule 23's procedural protections." *Id.* at 2556 (citation omitted).

14

III.    **THE COURT'S ORDER CREATES A MANIFEST INJUSTICE BY CURTAILING EXPRESS SCRIPTS' RIGHT TO SEEK MEANINGFUL DISCOVERY.**

The Order also creates a fundamentally imbalanced and prejudicial discovery process that severely undermines Express Scripts' ability to mount an adequate defense in this complex litigation. The Order contemplates that all 120 Plaintiffs may obtain complete relief through a finding of liability following a bench trial, but allows Express Scripts just 20 depositions, precluding Express Scripts from even deposing all Plaintiffs seeking relief. That limitation is especially disproportionate because Plaintiffs will have access to deposition transcripts of dozens of Express Scripts fact witnesses, plus transcripts of Express Scripts' 30(b)(6) corporate representatives, and may cross-notice any deposition taken in ongoing opioid litigation nationwide, including actions in the federal MDL, the City of Martinsville, Virginia, and the State of Alaska.[5]

Express Scripts, on the other hand, will be unable to depose crucial witnesses in relevant municipal departments—such as police, fire or emergency services, employee benefits, budgeting and financial management, and overall municipal management—for each of the 120 plaintiffs. Yet each municipality poses unique factual questions, and discovery will be needed from each Plaintiff on topics to include: (1) its administration or management of its health and pharmacy benefits plans; (2) the actions it took to limit the abuse, misuse, diversion, supply, or availability of prescription opioids; (3) its law enforcement or administrative investigations and prosecutions, enforcement actions, or other legal proceedings it undertook relating to any wrongful conduct or illegal activity concerning opioids; (4) efforts it took to report, discipline, sanction, fine, suspend, or revoke the licenses of any DEA registrant, including any pharmacy, pharmacist, distributor,

---

[5] *City of Rochester v. Purdue Pharma L.P.*, No. 1:19-op-45853-DAP (N.D. Ohio); *City of Ogdensburg v. Purdue Pharma L.P.*, No. 1:19-op-45852-DAP (N.D. Ohio); *City of Martinsville, Virginia v. OptumRx, Inc., et al.*, CL18000240-00 (Va. Cir. Ct.); *State of Alaska v. Express Scripts, Inc.*, No. 3:23-cv-00233-SLG (D. Alaska).

medical doctor, or other registered health provider relating to prescription opioids; and (5) identifying the individual prescriptions in each plaintiff jurisdiction adjudicated and/or dispensed by Express Scripts that caused the alleged nuisance.

The imbalanced discovery framework adopted by the Court also undermines critical statutory rights afforded to Express Scripts under West Virginia law. West Virginia Code § 55-7-13d(a)(2) gives Express Scripts the right to apportion fault to non-parties, and Express Scripts identified 90 non-litigating defendants and non-party entities in their Notice of Non-Party Fault. ECF Nos. 181, 182. Because of the sweeping nature of Plaintiffs' allegations of a widespread conspiracy, Express Scripts must have the ability to depose these non-party entities during fact discovery to present a complete defense.

In sum, by ordering a single statewide trial, the Court has effectively assumed, before a single piece of evidence has been presented, that Express Scripts' alleged conduct proximately caused identical harm across all 120 disparate municipalities, and that the alleged opioid crisis exists uniformly throughout the entire state of West Virginia. The Court's Order improperly deprives Express Scripts of the right to test that assumption through discovery.

## IV.    IF THE COURT DOES NOT RECONSIDER ITS ORDER, IMMEDIATE APPELLATE REVIEW IS WARRANTED.

In the alternative, Express Scripts respectfully requests that the Court certify the Order for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b). Certification under Section 1292(b) is appropriate where an order (i) "involves a controlling question of law," (ii) on which "there is a substantial ground for difference of opinion," and (iii) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Recognizing the importance of constitutional jury trial questions and related procedural issues, courts have certified orders resolving such issues under § 1292(b) for interlocutory review. *See In re Lion Air*

*Flight JT 610 Crash*, 110 F.4th 1007, 1011 (7th Cir. 2024) ("Here, the district court certified the jury trial question for interlocutory review. We agree with the district court that this issue is suitable for interlocutory review."); *In re U. S. Fin. Sec. Litig.*, 609 F.2d 411, 413 (9th Cir. 1979) ("Recognizing the importance of the jury trial question, it was certified for interlocutory appeal under 28 U.S.C. § 1292(b). . . . this court granted permission to appeal."). Because Express Scripts meets § 1292(b)'s requirements with respect to the following three questions, the Court should certify its Order for interlocutory appeal to the Fourth Circuit:

> **Jury Right on Public Nuisance Claim:** Whether, under the Seventh Amendment of the United States Constitution, a civil defendant in federal court is entitled to a jury trial when the plaintiff seeks a monetary recovery to remedy public nuisance, regardless of the characterization or label the plaintiff assigns to the remedy.

> **Jury Right on Severed Legal Claims:** When legal claims in a civil action are severed but not dismissed, whether the Court must allow a jury to decide any common factual issues on those legal claims before the Court may hold a bench trial to resolve public-nuisance claims.

> **Statewide Trial:** Whether, consistent with Article III of the United States Constitution, the Judiciary Act of 1789, and Federal Rule of Civil Procedure 23, a federal court may hold a statewide trial where plaintiffs do not include the state or a certified class.

## A.   The Court's Order Involves A Controlling Question Of Law.

For purposes of 28 U.S.C. § 1292(b), a controlling question of law includes any legal issue whose resolution would "substantially shorten the litigation" or that would constitute reversible error on appeal. *Gilmore v. Jones*, 2019 WL 4417490, at *3 (W.D. Va. Sept. 16, 2019) (quoting *In re Trump*, 928 F.3d 360, 370 (4th Cir. 2019), *on reh'g en banc*, 958 F.3d 274 (4th Cir. 2020), *judgment vacated sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021)); *see Maxtena, Inc. v. Marks*, 2014 WL 4384551, at *5 (D. Md. Sept. 2, 2014). Each of the legal questions identified here meet that definition. Resolving whether the court can proceed with a bench trial rather than a jury trial would obviously shorten the litigation and avoid the possibility of a reversible error, as the case would have to be retried to a jury if the Fourth Circuit ultimately determined that this Court

improperly held a bench trial. The same is true of the question about the proper scope of the trial; if the Court holds a statewide trial and the Fourth Circuit later determines that approach was improper, a retrial would have to occur—creating the possibility of a significant waste of party and judicial resources.

**B.      There Is Substantial Ground For Difference Of Opinion.**

The Order also presents legal questions on which there is a substantial ground for difference of opinion. "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *In re Trump,* 928 F.3d at 371 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). As explained above, this Court's resolution of each of the legal questions identified conflicts with core principles articulated by the Supreme Court and the Fourth Circuit, and the Order also directly conflicts with the way that other courts have resolved parallel questions concerning Seventh Amendment jury rights. If the Court declines to change its position on these issues, it should at least acknowledge that there is substantial ground for disagreement on their proper resolution.

**C.      An Immediate Appeal May Materially Advance The Ultimate Termination Of The Litigation.**

Under the final prong, courts may certify questions that *could* advance termination of the litigation. *In re Trump*, 928 F.3d at 371. As explained above, each of the identified questions readily satisfies that definition, because trying the case initially before the proper factfinder and with the proper scope of liability—rather than retrying the case after an appellate reversal—would clearly advance the termination of the litigation.

## CONCLUSION

The Court should grant reconsideration and amend the Order, as proposed by Express Scripts and attached here. In the alternative, Express Scripts respectfully requests that this Court certify the Order for immediate review to the United States Court of Appeals for the Fourth Circuit.

Dated: August 18, 2025            Respectfully submitted,

*/s/ Charles R. Bailey*

Charles R. Bailey (WV Bar #202)
Justin C. Taylor (WV Bar #8014)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: (304) 345-4222
F: (304) 343-3133
cbailey@baileywyant.com
jtaylor@baileywyant.com

Jonathan G. Cooper (*pro hac vice*)
Christopher Michel (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
jonathancooper@quinnemanuel.com
christophermichel@quinnemanuel.com

Patrick King (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
700 Louisiana St., Suite 3900
Houston, TX 77002
(713) 221-7000
patrickking@quinnemanuel.com

19

Elisabeth Miller (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com

*Attorneys for Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Express Scripts Sales Operations, Inc., Evernorth Health, Inc., Evernorth Care Solutions, Inc., Evernorth Direct Health, LLC, Evernoth Behavioral Health, Inc., and Evernorth Sales Operations, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

Ohio County Commission, *et al.*,

                    Plaintiffs,

v.

Express Scripts, Inc., *et al.*,

                    Defendants.

Case No.: 5:24-CV-142-JPB
Honorable John Preston Bailey

**CERTIFICATE OF SERVICE**

    It is hereby certified that on this 18th day of August, 2025 the foregoing **MEMORANDUM OF LAW SUPPORTING EXPRESS SCRIPTS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE TO CERTIFY FOR INTERLOCUTORY REVIEW** was filed through the ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing.

                    /s/ Charles R. Bailey
                    Charles R. Bailey (WV Bar #202)
                    Justin C. Taylor (WV Bar #8014)