**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

Ohio County Commission, *et al.*,

Plaintiffs,

v.

Express Scripts, Inc., *et al.*,

Defendants.

Case No.: 5:24-CV-142-JPB

Honorable John Preston Bailey

**STIPULATION AND [PROPOSED] AGREED ORDER REGARDING PRODUCTION**
**OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

**1.    Purpose**

This Order will govern the production of Documents and ESI (as defined below) by Plaintiffs and Defendants (the "Parties") as described in Federal Rules of Civil Procedure 26, 33, and 34. This Order shall apply to the production of hard-copy and electronic documents by the Parties to *Ohio County Commission et al v. Express Scripts, Inc. et al.*, Case No. 5:24-CV-142-JPB and *City of Wellsburg et al. v. Express Scripts, Inc. et al.*, No. 5:25-CV-164-JSB ("the Litigation").

The production of documents and ESI by the Parties also shall be subject to the provisions of orders concerning confidentiality, privilege, and/or protected health information as agreed to among the Parties and/or entered by the Court. The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decision authority other than concerning matters that are addressed in this Order.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work- product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the

1

discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of orders governing confidentiality, privilege, and/or protected health information entered by the Court in the Litigation, unless expressly provided for in such an order. Subject to the Parties' objections and responses to requests for production of Documents, all Documents that are identified as responsive to discovery requests shall be produced in the manner provided herein. With respect to fact discovery, while there might be some need for limited supplementation of the fact discovery record for matters directly related to certain Defendants' operations in West Virginia, if any, documents produced by Defendants in *In re National Prescription Opiate Litigation,* 1:17-md-2804 (N.D. Ohio) are deemed reproduced in this action, with the exception of privileged documents that were produced in the MDL under protest as a result of MDL court orders regarding certain of Express Scripts' privilege claims. *See In re National Prescription Opiate Litigation,* No. 1:17-md-2804-DAP (N.D. Ohio) (Dkt. Nos. 5767, 5832, 5842, 5844). Moreover, all documents produced in *City of Huntington and Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, S.D. W.Va. No. 22-1819 and *In Re: Opioid Litigation,* No. 19-C-9000  (WV M.L.P) that are made available to Defendants are deemed reproduced in this action. Notwithstanding the foregoing, the Parties are not required to produce Documents that have already been deemed reproduced and are available to the other Parties.

2.      **DEFINITIONS**

        a.      **"Confidentiality Designation"** means the legend, branding, or other identifying method affixed to or otherwise denoting Documents or ESI as "CONFIDENTIAL," "CONFIDENTIAL HEALTH INFORMATION," "HIGHLY CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY—P&T MEMBER IDENTIFYING INFORMATION" discovery

information as defined by, and subject to, the terms of the Stipulated Protective Order agreed to by the Parties and/or entered by the Court in this action.

b.    **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

c.    **"Document Family"** means the association between an attachment and its parent Document or between embedded Documents and their parent.

d.    **"Electronic Document or Data"** means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

e.    **"Electronically stored information" or "ESI,"** as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media.

f.    **"Extracted Full Text"** means the full text that is extracted electronically from native electronic files, and includes all header, footer, and document body information.

g.    **"Hard-Copy Document"** means documents existing in paper form at the time of collection.

h.    **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, including MD5, SHA, and

SHA-1, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

       i.      **"Load files"** means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Full Text or OCR text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those within a Document Family) used to load that production set into the document review platform of the Party receiving a production ("Receiving Party"), and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load file for all produced documents with each particular production in accordance with specifications provided herein.

       j.      **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

       k.      **"Metadata"** means: (i) information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial

data source from which it was collected. Nothing in this order shall require any party to manually populate the value for any metadata field.

l.      **"Native Format" or "native file"** means the format of ESI in which it was generated and/or used by the Party Producing ESI or documents (the "Producing Party") in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

m.      **"Optical Character Recognition" or "OCR"** means the optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

n.      **"Searchable Text"** means the native text extracted from an electronic document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a paper Document.

## 3.      IDENTIFICATION OF DOCUMENTS AND ESI

a.      The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

b.      The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning

overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

        c.      **Non-Custodial ESI**: The parties will meet and confer regarding available data, including Non-Custodial ESI.

        d.      **Password Protected Files**. In the event that any Document or ESI (or portion thereof) is encrypted or password-protected, the Producing Party shall make all reasonable efforts to open the Document or ESI.

        e.      **De-NISTing and Zero-Byte Files**. The Parties may exclude from their review system-generated files and folders that are contained on the current NIST file list and are not likely to contain user-created files, if not otherwise required for production by this Stipulation, or that are identified as zero bytes in size.

        f.      **No Waiver.** Nothing in this order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-upon search terms, techniques, or tools (including any proposed as supplements).

**4.**      **DEDUPLICATION**

        a.      To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

        b.      To the extent a party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, hash values must be identical for both

the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

      c.     A Producing Party shall de-duplicate documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in the Litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

      d.     To the extent the Producing Party deduplicates its Documents, it shall deduplicate individual Documents or Document Families in their ESI sources by the use of MD5, SHA-1, or SHA256 Hash Values. No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5, SHA-1, or SHA256 Hash Values

      e.     The fields upon which the Hash Value of emails are calculated shall be disclosed by the Producing Party upon request.  For emails with attachments, the Hash Value shall be generated based on the parent-child Document grouping, and only email messages in which the parent Document and all attachments are exactly the same will be considered duplicates.  An email that includes additional or different content in the recipient fields, (i.e., TO, CC, and BCC) shall not be treated as a duplicate of an email that is otherwise identical.

f.      The Producing Party may also deduplicate or "thread" emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain, except where an earlier or incomplete iteration of an email chain contains an attachment or unique data or includes any different participants.

g.      The Custodian, File Path, and Email Folder will be included (for all available copies of responsive ESI) in the respective CUSTODIAN(S), FILEPATH, and EMAIL_FOLDER(S) fields in the production Load File.

h.      No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 Hash Values.

## 5.      PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

a.      **Standard Format.** Unless otherwise specified in Section 6(b) or pursuant to Section 6(j) below, the Parties shall produce documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

b.      **Native Format.** Except as provided by Section 6(j) below, the Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, and other file types that cannot be accurately represented in TIFF format in native format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Access, Oracle, or other proprietary databases). For each document

produced in native format, a responding Party shall also produce a corresponding cover page in TIFF image format, specifying that the document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.

       c.    **Color.** Documents need not be produced in color as a matter of course.  However, the Producing Party will make reasonable efforts to identify, for production in color, any Documents where color is significant to the full comprehension of the Document, such as Documents containing charts, graphs, or tables where categories of data are distinguished by color, Documents with highlighting, and Documents where authorship is denoted by colored text.  The Receiving Party may also request that additional Documents be reproduced in color JPG images by making a specific request in writing, and the request shall not be denied except upon a showing of good cause.

       d.    **Embedded Objects.** For Documents containing embedded files or objects, the Producing Party shall make reasonable efforts to extract the embedded files or objects as separate Documents and treat them like attachments to the Document.  Images embedded in emails are not required to be extracted and produced separately.

       e.    **Load Files.** Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt) containing a field with the full path and filename to files produced in native format and also containing metadata fields identified in Appendix A, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for

vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations).

      f.     **.Txt Files.**  For all documents containing extracted full text or OCR text, the Producing Party shall provide searchable document level .txt files (named using the Bates start/"BEGDOC"), which shall reside in the same file directory as the images for such documents.

      g.     **Bates Numbering and Other Unique Identifiers.**  Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number"). All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

      h.     **Technical Processing Issues.**  If a member of a Document Family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), the technical issue shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed," or similar language, and identifying in the production's accompanying Load File any Document requiring a technical-issue slipsheet.  The associated Metadata for the file with the technical issue shall be produced if technically possible. Thereafter, the Receiving Party may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

      i.     **Hard-Copy Documents.**  Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and

produced following the same protocols set forth in Section 6(a) above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

   j. **Confidentiality Designation.**  To the extent any Document or ESI (or portion thereof) produced as a TIFF image is designated as "CONFIDENTIAL," "CONFIDENTIAL HEALTH INFORMATION," "HIGHLY CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY—P&T MEMBER IDENTIFYING INFORMATION" pursuant to any applicable stipulation or order concerning confidentiality in this action, the Producing Party shall electronically brand the Confidentiality Designation on the image at a location that is

reasonably designed to avoid concealing or obscuring any information from the source Document. For Documents produced in Native Format, the Producing Party shall name the file with the Bates number followed by the Confidentiality Designation and the file extension.

k.     **Parent-Child Relationships.** The Parties acknowledge and agree that parent-child relationships within a document family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive non-privileged electronic documents attached to an e- mail or embedded within other electronic documents and hard-copy documents attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document. The Producing Party shall insert a slipsheet for any attachment over which the Producing Party claims privilege or otherwise withholds under applicable law or order or agreement of the parties, while maintaining the original consecutive order of the attachment(s).

l.     **OCR.** OCR software shall be set to the highest quality setting during processing.

m.     **Deviation from Production Specifications.**  If a particular document or category of documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

n.     **Productions From Other Proceedings.** The production of documents made by Defendants in other civil investigations, litigations, and/or administrative actions may be reproduced in the format in which they were previously produced, including any previously

produced confidentiality designations, redactions, metadata, load files, and accompanying text files.

o.     **Use at Deposition.**  Any document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with document's Bates Number and Confidentiality Designation, as described in Section 6(a), above, absent exigent circumstances. If a Party identifies and/or marks a Document as an exhibit at a deposition without the corresponding cover page as required by this provision, the Party shall note the Bates Number and Confidentiality Designation of the Document on the record. Where the Party identifying and/or marking the exhibit is unable to do so during the deposition, the exhibit shall be treated during the deposition as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and designated as such until the Bates Number is identified, and the proper Confidentiality Designation can be determined.

6.     **REDACTIONS**

a.     **Redactions Generally**. A Party may use redactions to protect attorney–client or work-product privileges, and certain confidential information, as permitted by this Stipulation or any Protective Order agreed and/or entered in the Litigation, or any other agreement reached by the Parties in the Litigation. Any redactions shall be clearly indicated on the face of the document. The basis for the redactions must either appear on the redactions themselves or, if space within the redaction does not permit, on a separate log of any such redactions within forty-five (45) days of production of said document.  If the redacted document is placed on a log, the log shall follow the same format and include the same type of metadata and information as outlined in Paragraph 10.a below. Additionally, redactions must be included in a metadata field that indicates that the document contains redactions and the basis for the redactions (e.g., Privileged"). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall

produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged or there is another independent basis for the redaction that is permitted by this Stipulation or any Protective Order agreed and/or entered in the Litigation, or any other agreement reached by the Parties in the Litigation. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Redacted versions of spreadsheets, computer slide presentations, and word processing files containing hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be produced in color in TIFF or JPEG format. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF or JPEG image is not reasonably usable.

b.    **Metadata.** If a Document is produced in redacted form, the same Metadata fields listed in Exhibit A shall be produced for a redacted Document, except that fields may be redacted to the extent that they contain redactable data.

c.    **Redacted Native Documents.** If a Document that would otherwise be produced in Native Format requires redaction, the Producing Party may produce such document in TIFF with an OCR text file and relevant Metadata in accordance with this Stipulation.  The Producing Party shall take care to ensure that all non-redacted information is produced, including hidden rows or columns, cell values, formulas, comments, speaker notes, or other information.  The Producing Party shall also take care to ensure that any spreadsheets produced as redacted TIFFs are formatted so as to be legible, and that all readable content is maintained (e.g., not displayed as ######). Redacted versions of computer slide presentations shall be produced in TIFF or JPEG format. Should the Receiving Party find that a redacted Document, such as a spreadsheet, produced in

TIFF is not reasonably usable, the Receiving Party may request that the Document be redacted using native redaction techniques and produced in Native Format.

        d.    **Privilege Logs.** The production of a Document in redacted form does not affect the Producing Party's obligation to timely assert and substantiate any assertion of privilege over the redacted content in a privilege log, subject to procedures outlined in Section 10 of this Order.

        e.    **Logging Redactions.** Redaction of non-privileged information shall not be logged provided the party specifies the basis of the redactions on the production image or in the metadata.

## 7.    PRODUCTION MEDIA

The Producing Party shall produce documents via secure FTP site, or by other readily accessible means as the Parties may agree (the "Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced. If the Producing Party produces documents via secure FTP site, the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

## 8.    COST SHIFTING

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

## 9.    THIRD-PARTY ESI

        a.    A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the order concerning confidentiality agreed and/or entered in the Litigation with

the subpoena and state that the Parties in the Litigation have requested that third-Parties produce documents in accordance with the specifications set forth herein.

b.    The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-Party.

c.    If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

**10.    PRIVILEGE LOGS**

a.    A producing party shall create a privilege log of all documents fully withheld from production and/or redacted on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include:

(i)    The privilege(s) being asserted;

(ii)    A description of the subject matter or general nature of the document that, without revealing information itself privileged or protected, is sufficiently detailed to allow the Receiving Party to assess the applicability of the asserted privilege;

(iii)    If applicable, information sufficient to understand the family relationship of withheld documents and any family member metadata for any document associated with the logged document;

(iv)    Document type, indicated by file extension (e.g., .doc, .xls, .pdf, etc.) or, if unavailable, a description of the document type (e.g., "e-mail," "Word document," "Excel document," "PDF," etc.)

(v)    The name of the file or, for emails, the subject line of the email;

(vi)    The date of the document, if known;

(vii)    Author metadata;

(viii)    For all communications, including e-mails, texts, and chats, the sender and all recipient(s), including any available from, to, cc, and bcc metadata. Where available, that information will also be provided in the format of each individual's email address;

(ix)    Information identifying the source of the withheld document (e.g., the relevant custodial file);

(x)     Indication with a unique identifier (e.g., asterisk) of which individual(s) (authors and recipients) are attorneys, paralegals, or legal assistants;

(xi)    Indication with a separate unique identifier of any third-party individual(s) (authors and recipients) (e.g., double asterisk), such as individual(s) who are not employees of Defendants; and

(xii)   A unique document ID (separate from any Bates numbering), along with a separate column identifying the Bates number(s) of a document claimed to be privileged if produced in a redacted form.

b.    If an attachment (parent or child) to a document or communication is also being withheld, such attachment(s) shall be identified in the Privilege Log as a separate entry or entries. The Producing Party shall use reasonable efforts to log families of documents together in sequence, with the parent document followed by any other withheld and/or redacted documents in the document family, where practicable. Where families of documents are not logged together, the Producing Party shall use reasonable efforts to identify where a document belongs to a document family occurring elsewhere in the privilege log, where practicable.

c.    Privilege Logs shall be produced to all other parties in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the receiving parties.  Privilege logs will be produced to all other parties on a rolling basis so as to not delay production of privilege logs, and in no event later than 45 days after substantial completion of production from a custodial or non-custodial source is delivered to the receiving party.  When the deposition of a custodian is scheduled for a date following the substantial completion of production of their custodial file, the parties shall make good faith efforts to provide privilege logs involving documents from the deponent's custodial file no fewer than ten (10) days prior to the deposition, unless otherwise negotiated and agreed to between counsel.  The

Producing Party shall make a good faith effort to identify (in its privilege log cover letter) the primary production volume(s) and/or custodian(s) to which the privilege log relates.

      d.      The Parties agree that the following categories of documents are presumptively privileged and shall not be logged: (i) privileged or work-product information generated after the filing of the complaint, (ii) outside counsel's files relating to the firm's involvement in providing legal advice to Party in connection with any opioid related litigation or investigation, and (iii) communications between a Party and its outside counsel regarding any opioid litigation, investigation(s) relating to litigation or potential litigation, or other proceedings related to opioids, provided the communications are protected from disclosure under West Virginia law by either the work product doctrine or other applicable privilege.

      e.      The Receiving Party shall provide written notice to the Producing Party of any Privilege Log entries that it asserts are not Privileged or that it asserts require further explanation. The Parties agree to meet and confer to address the issues raised in any such correspondence. To the extent the parties are unable to resolve the dispute, the Parties agree to raise the issue to the court and/or special master. The following procedure shall constitute satisfaction of the meet and confer requirement prior to submitting privilege-related disputes to the court and/or special master:

            (i)      A party challenging a Producing Party's claims of privilege, privilege redaction, other redaction, or work product protection, shall provide written notification of those challenges, including the bases for the challenges and/or requests for additional clarifying information, to the Producing Party. ;

            (ii)     Failure of the Challenging Party to provide written notification of its challenges or failure of the Challenging Party to offer to meet and confer as outlined

above, shall prevent the Challenging Party from submitting its privilege-related challenge to the court or special master;

(iii)    If the Challenging Party provides written notification, the Producing Party shall provide the Challenging Party with a written response (providing information supporting its claims and/or indicating which privilege claims, redactions, etc., the Producing Party maintains and which it withdraws, downgrades or modifies) within ten (10) days following the date of the written challenge notification.    The Challenging Party shall offer to meet and confer with the Producing Party regarding the Producing Party's responses, and shall provide the Producing Party with multiple alternatives (dates and times) to meet and confer during the seven (7) day period following the date of the Producing Party's response to the written challenge notification.  These time periods may be modified in emergent circumstances, as agreed to by the Challenging and Producing Parties, or as ordered by the court or the special master;

(iv)    Failure or refusal of the Producing Party to meet and confer with the Challenging Party and/or provide a written response (as per 10.e.iii above) shall allow the Challenging Party to submit its privilege-related challenge to the court or special master.

f.    The process outlined in Paragraph 10.e. may result in the withdrawing or narrowing of privilege claims, privilege redactions, other redactions, or work product claims. To the extent that any such claims or redactions are downgraded, modified, or withdrawn by the Producing Party, as a result of the meet-and-confer process outlined in Paragraph 10.e or on its own accord, the Designating Party shall, within fifteen (15) days, or within a time frame as agreed to by the

Challenging and Producing Parties, or as ordered by the Court, apply any such downgrades, modifications, or withdraws to any other similar or emblematic claims or redactions, and provide written notice to the Challenging Party regarding which other privilege claims, privilege redactions, other redactions, or work product claims have been downgraded, modified, or withdrawn by the Producing Party.

g.    The production of any documents or information in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

**11.    MISCELLANEOUS**

a.    **Objections Preserved.** Nothing in this Order shall be interpreted to require disclosure of non-responsive or privileged Documents or information. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Hard-Copy Documents and ESI.

b.    **Protective Order**. All Documents produced by the Parties will be subject to the terms of the Protective Order.

c.    **English Language.** To the extent any Document exists in the usual course of business in more than one language, the Document shall be produced in English, if available. If no English version of the Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

12.     **BEST EFFORTS COMPLIANCE AND DISPUTES**

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order. If a Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

13.     **MODIFICATION**

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through counsel of record.

**DATED**: _08/22/2025____

_s/ Clayton J. Fitzsimmons_
Fitzsimmons Law Firm PLLC
Counsel for Plaintiffs

**DATED**: _08/22/2025_____

_s/ Elisabeth Miller_
Of Counsel
Quinn Emanuel Urquhart & Sullivan, LLP
Counsel for Defendants

**IT IS SO ORDERED.**

**DATED**: _____

_____
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

## Appendix A: ESI Metadata and Coding Fields

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the | All | 2 |
| Confidential | Confidentiality designation, if any, of the document | All | Confidential<br>Highly Confidential |

| All Custodians | Names of all custodians who possessed the document, including deduplicated values, in format: Lastname, Firstname.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B.<br><br>For documents from centralized repositories where custodian name(s) | All | Doe, John; Smith, John; Smith, Jane |
| Duplicate Custodian File Name | The names of unproduced duplicate copies of files. | All | |
| Duplicate Custodians | The file path/directory path correlating to the | All | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Directory Path | duplicate copies of files. | | |
| Source | Source shall be used in connection with document obtained from third-Parties and identify the third-Party having provided the particular material. If the third-Party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | | |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |

| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; Electronic documents | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Family Date | Date last modified or, for e-mails, sent date of the parent | Electronic documents; E-attachment | 01/01/2015 |
| Family Time | Time last modified or, for e-mails, sent time of the parent | Electronic documents; E-attachment | 12:30:00 |

| DateReceived | Date email was received. | E-mails | 01/01/2015 |
|---|---|---|---|
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| DateAccessed | Date document last accessed | Electronic documents; E-attachment | 01/01/2015 |
| Date Last Printed | Date the document was last printed. | E-attachments; Electronic documents | 01/01/2015 |
| Time Last Printed | Time the document was last printed. | E-attachments; Electronic documents | 12:30:00 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Importance | Level assigned by creator | E-mails | High |
| Conversation | E-mail conversation designation | E-mail | Re: Smith Summary |
| Conversation Index | | E-mail | |
| Title/E-Title | Title of document | E-attachments; Electronic documents | Smith Summary |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Redaction | Basis for redactions in document. | E-attachments; Electronic documents | |
| FileName | File name of original document | Electronic documents; E-attachment | Microsoft Word 2007/2010 |

| File Type | Application type | Electronic documents; E-attachment | Word |
|---|---|---|---|
| File Size | Size of file | All | 40 gb |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document_12345.doc |
| Author | Document author/creator | E-attachments; Electronic documents | John Doe |
| Company | Party making the production | All | Company X |
| Title | Document Title | E-attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; E-attachments; E-mails | |
| Prod Volume | Production Volume | All | Defendant X Volume 1 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| File Path | Location during the normal course of business | All | |

| | | | |
|---|---|---|---|
| AttachDocID | | Electronic documents; E-attachments; E-mails | |
| ATTACHNAME | | | |
| ATTACHRANGE | | | |
| FOREIGN LANGUAGE | | | |
| TIME ZONE PROCESSED | | | |
| E-LAST MODIFIED BY | | | |
| MESSAGE TYPE | | | |
| CALENDAR MEETING STOP/START | | | |
| RECORD TYPE | | | |
| HAS HIDDEN DATA | | | |
| HIDDEN COLUMNS | | | |
| HIDDEN NOTES | | | |
| HIDDEN ROWS | | | |
| HIDDEN SHEETS | | | |
| HIDDEN SHEETS COUNT | | | |
| HIDDEN SLIDES | | | |
| HIDDEN TEXT[1] | Yes/No indicator of whether hidden text exists in the file | All | |
| HIDDEN TRACK CHANGES | Yes/No indicator of whether tracked changes exist in the file | All | |

---

[1] Includes track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

| Field | Field Description | Populated For | Example Values |
|---|---|---|---|
| HIDDEN VERY HIDDEN SHEETS | | | |
| HIDDEN VERY HIDDEN SHEETS COUNT | | | |
| HIDDEN WORKBOOK | | | |
| HIDDEN WORK BOOK WRITE PROTECTED | | | |
| MESSAGE ID | | | |
| NUMBER OF ATTACHMENTS | | All | |
| ORIGINAL FOLDER PATH | | All | |
| IS EMBEDDED | | | |
| TextPath | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document_12345.txt |