IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**OHIO COUNTY COMMISSION, et al.,**

        Plaintiffs,

    v.                               **Civil Action No. 5:24-CV-142**
                                                Judge Bailey

**EXPRESS SCRIPTS, INC., et al.,**

        Defendants.

## ORDER

Pending before this Court is Express Scripts Entities' Motion for Reconsideration or in the Alternative to Certify for Interlocutory Review [Doc. 199] and a Motion and Memorandum of Law in Support of Express Scripts' Requesting a Status Conference and to Stay Proceedings [Doc. 209]. Responses [Docs. 213 & 216] and Replies [Docs. 217 & 218] were filed for each Motion. This Court will address each Motion in turn.

**I.    Express Scripts Entities' Motion for Reconsideration or in the Alternative to Certify for Interlocutory Review [Doc. 199]**

In defendants'[1] Motion for Reconsideration or in the Alternative to Certify for Interlocutory Review (hereinafter "Motion for Reconsideration"), they move the court under Federal Rules of Civil Procedure 54(b) and 59(e) for reconsideration of its August 4, 2025

---

[1] Defendants consist of Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Express Scripts Sales Operations, Inc., Evernorth Health, Inc., Evernorth Care Solutions, Inc., Evernorth Direct Health, LLC, Evernorth Behavioral Health, Inc., and Evernorth Sales Operations, Inc.

1

Order [Doc. 192].  *See* [Doc. 199].  In the alternative, defendants move the Court under 28 U.S.C. § 1292(b) to certify its August 4, 2025 Order for immediate interlocutory review to the United States Court of Appeals for the Fourth Circuit.  [Id.].

On August 4, 2025, the Court ordered an expedited two-phase bench trial on public-nuisance liability, severing but not dismissing all other claims.  Defendants now move for reconsideration, arguing that the Order infringes their Seventh Amendment right to a jury trial by assigning legal issues to a bench trial, improperly establishes a statewide liability and abatement trial despite the absence of statewide plaintiffs or a certified class, and imposes unfair discovery limitations by restricting defendants to twenty (20) depositions while allowing plaintiffs broader access to discovery through cross-noticing.  *See* [Doc. 200 at 2–3].  Defendants contend these deficiencies, coupled with the lack of full briefing or explanation on key constitutional and procedural issues, create manifest injustice and warrant reconsideration or, alternatively, certification for interlocutory review under 28 U.S.C. § 1292(b).  [Id. at 3–4].

The decision whether to reconsider or modify interlocutory rulings is within the sound discretion of the district court. **St. Annes Dev. Co., Inc. v. Trabich**, 443 Fed.App'x. 829, 832 (4th Cir. 2011).  Courts generally limit the grounds for a Rule 54(b) motion for reconsideration to (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice. **Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.**, 148 F.3d 396, 403 (4th Cir. 1998).  A motion under Rule 54(b) should not be used to rehash arguments the court has already considered because the movant is displeased with the outcome, nor should it be used to

2

raise new arguments that could have been asserted previously. ***Blankenship v. Fox News Network, LLC***, 2021 WL 3706683, at *5 (S.D. W.Va. Aug. 20, 2021) (Copenhaver, Jr., J.) (citations omitted). Reconsideration of a judgment is generally an "extraordinary remedy [that] should be used sparingly." ***Pac. Ins. Co.***, 148 F.3d at 403.

First, the Court's August 4, 2025 Order is a proper exercise of the authority and broad discretion afforded the Court in managing complex litigation. Federal courts possess inherent powers to manage complex litigation, supplemented by the Federal Rules of Civil Procedure, including Rule 16(c)(2)(L), which authorizes "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and Rules 16(c)(2)(M) and 42(b), which permit separate trials of particular claims or issues. Severance is "one of the trial judge's most useful trial management devices to ensure the just and efficient determination of civil actions as required by Rule 1." ***Simon v. Philip Morris Inc.***, 200 F.R.D. 21, 27 (E.D.N.Y. 2001).

This case is complex, and the Court properly exercised its discretion in bifurcating the issues. Under the trial plan, Phase I addresses the common issues of whether an opioid-related public nuisance exists across the plaintiff jurisdictions and whether defendants engaged in wrongful conduct contributing to that nuisance. Trying these common issues together avoids duplicative trials, promotes judicial economy, and provides an efficient vehicle for the presentation of evidence. The Court's reference to a "statewide" trial reflects the aggregate nature of the proof, recognizing that the opioid epidemic has become a pervasive public harm affecting the vast majority of West Virginia. The trial plan

does not relieve plaintiffs of their burden of proof but merely postpones specific causation until Phase II, consistent with sound case management principles. This sequencing ensures that without proof of general causation, specific causation need not be reached, thereby conserving judicial resources. If plaintiffs prevail in Phase I, defendants will retain the opportunity to present defenses and to challenge whether their conduct substantially contributed to a nuisance in each jurisdiction.

Second, the Court holds that the Seventh Amendment does not confer a right to a jury trial in this matter. A governmental public nuisance action seeking only abatement is equitable in nature and, therefore, outside the scope of the Seventh Amendment jury-trial guarantee. *See **Tull v. United States***, 481 U.S. 412, 423 (1987) ("A public nuisance action was a classic example of the kind of suit that relied on the injunctive relief provided by courts in equity."). As the commentators at the time noted, governmental actions to abate a public nuisance by injunction were historically recognized as actions in equity. 2 Story, Commentaries on Equity Jurisprudence §§923-924 (5th ed. 1849).

West Virginia law has long characterized public nuisance abatement actions as equitable: "Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction, even if it had not been decided that this was a public nuisance." **Town of Weston v. Ralston**, 48 W.Va. 170, 36 S.E. 446, 456 (1900); *see also* **McMechen v. Hitchman-Glendale Consol. Coal Co.**, 88 W.Va. 633, 107 S.E. 480, 481 (1921) (recognizing that "[a] court of equity, having jurisdiction in such case to abate the nuisance, may assess, and enter a decree for, such

damages, . . . the jurisdiction so to do [being] merely incidental to the exercise of the jurisdiction to abate the nuisance.").

In the context of the opioid litigation, the Supreme Court of Appeals rejected a Writ of Prohibition by other opioid defendants after the West Virginia Mass Litigation Panel ("MLP") sought to hold a bench trial on similarly asserted public nuisance claims seeking only abatement noting:

> As to the issue in this case—public nuisance—we observe that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance[.]" But, we also observe the opposite. For example, while one court found that the public nuisance claim before it was equitable, it noted that nuisance claims seeking damages had, in some cases, been heard by a jury before the merger of law and equity.

**State ex rel. Amerisourcebergen Drug Co. v. Moats**, 245 W.Va. 431, 441, 859 S.E.2d 374, 385 (2021).

The relief sought here—abatement—is an equitable remedy, distinct from damages, and thus does not implicate the jury-trial right. As Judge Dan Aaron Polster in the federal opioid Multi-District Litigation ("MDL") concluded:

> [T]he fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim for "abatement costs" is in fact a "claim for damages." Unlike tort damages that compensate an injured party for past

5

harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.

*In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019).

To the extent defendants rely on contrary authorities, those cases are either distinguishable, dicta, or otherwise unpersuasive. Rule 39(a)(2) directs this Court to conduct a bench trial when no federal jury-trial right exists, and such is the case here. Accordingly, the Court concludes that defendants are not entitled to a jury trial on plaintiffs' public nuisance abatement claim.

Third, the Court finds that defendants' contention that the present trial plan cannot proceed because of the pendency of legal claims is unfounded, or at best premature. This Court has already determined, in denying Defendants' Motion to Dismiss [Doc. 188], that West Virginia law recognizes a public nuisance cause of action. Plaintiffs have indicated their intention to seek client authorization to dismiss their legal claims in advance of the August 2025 bench trial, consistent with their prior representations to the Court. At present, however, plaintiffs are unable to pursue such dismissal because the Fourth Circuit's forthcoming decision in *City of Huntington v. Amerisource Bergen Drug Corporation*, Nos. 22-1819(L) and 22-1822, may alter the controlling law. If the Fourth Circuit affirms the viability of public nuisance claims, plaintiffs will seek to dismiss their remaining legal claims. If, however, the Fourth Circuit rules otherwise, the public nuisance claims would no longer be before this Court, and the Court would then issue a revised trial plan addressing any surviving legal claims.

Fourth, the Court finds that defendants' challenge to the Court's trial plan—framed in terms of standing, statewide relief, and an alleged *de facto* class action—is without merit. Express Scripts conflates the question of standing with the evidentiary methods by which Plaintiffs may prove their claims.

As to the first point, the Court rejects defendants' standing argument. Plaintiffs are not proceeding on behalf of the State as *parens patriae*, nor are they asserting a statewide cause of action. Rather, each city and county brings its own claim under statutory authority permitting it to abate public nuisances within its respective jurisdiction. Nothing in the trial plan alters the substantive nature of those claims. The fact that plaintiffs intend to rely on aggregate evidence of the opioid epidemic's impact across West Virginia does not transform the claims into a statewide action. Proof that the epidemic exists statewide necessarily establishes that it exists in the plaintiff jurisdictions, which together represent the vast majority of the State's population. This is a matter of evidence at trial, not a matter of legal standing. Each plaintiff must still establish every element of its own claim in order to prevail.

With respect to the second argument, the Court finds that defendants' contention regarding improper statewide relief is likewise unfounded. The trial plan does not purport to determine the rights of counties or municipalities that are not parties to this litigation. Any judgment in favor of plaintiffs will extend only to the named plaintiffs, and non-parties remain free to pursue their own claims. By the same reasoning, if defendants prevail, non-parties will not be barred from pursuing independent actions.

Regarding the third contention, the Court finds no merit in the argument that the trial plan amounts to a class action in disguise. Because non-parties are neither entitled to

relief nor bound by any judgment in this case, the structure of the trial does not create a class proceeding.

Fifth, district courts possess broad discretion to manage both the scope and timing of discovery. See **Hinkle v. City of Clarksburg, W.Va.**, 81 F.3d 416, 426 (4th Cir. 1996). A key purpose of bifurcation is to delay the expense of extensive discovery and trial preparation until threshold liability questions are resolved. See **Novopharm Ltd. v. Torpharm, Inc.**, 181 F.R.D. 308, 312 (E.D. N.C. 1998) (Boyle, C.J.). One of the significant advantages of bifurcation is thus the streamlining of discovery. See **Honican v. Stonebridge Life Ins. Co.**, 2005 WL 2614904, at *2 (E.D. Ky. Oct. 13, 2005).

Consistent with this authority, the Court limited Phase I discovery to matters directly relevant to the issues set for trial, including restricting defendants to twenty (20) depositions. Defendants contend this limitation impairs their ability to defend themselves. The Court disagrees. The Phase I proceedings are confined to determining whether a public nuisance exists, whether an oversupply of opioids created that nuisance, and whether defendants' conduct contributed to that oversupply. The areas in which defendants assert broader discovery is required—such as plaintiff-specific causation, affirmative defenses, and third-party fault—are reserved for Phase II and will only be reached if plaintiffs prevail in Phase I. Discovery on those matters has not been foreclosed; it has simply been deferred.

Furthermore, the Court has not yet entered any order governing Phase II discovery, which may ultimately prove unnecessary if plaintiffs are unsuccessful in Phase I.

Accordingly, defendants' objections are premature, and the Court finds that the scope of Phase I discovery is properly limited and proportionate to the issues designated for trial.

Sixth and finally, interlocutory appeals under 28 U.S.C. § 1292 are permitted only in extraordinary circumstances that warrant departing from the strong policy favoring appellate review after final judgment. *See* ***Terry v. June***, 368 F.Supp.2d 538, 539 (W.D. Va. 2005) (Michael, J.).  No such circumstances are present here.

The issues defendants seek to certify are procedural in nature and do not present controlling questions of law whose resolution would materially advance this litigation. Courts routinely deny certification where the dispute centers on the discretionary adoption of a trial management plan. Moreover, the proposed questions are not case-dispositive, there is no genuine basis for substantial disagreement, and the trial plan rests on sound legal reasoning.  Certification at this stage would serve only to delay, rather than expedite, the resolution of the case.

For the foregoing reasons, Express Scripts Entities' Motion for Reconsideration or in the Alternative to Certify for Interlocutory Review [**Doc. 199**] is **DENIED**.

**II.     Motion and Memorandum of Law in Support of Express Scripts' Requesting a Status Conference and to Stay Proceedings [Doc. 209]**

In defendants' Motion and Memorandum of Law in Support of Express Scripts' Requesting a Status Conference and to Stay Proceedings (hereinafter "Motion Requesting a Status Conference"), defendants request that the Court convene a hearing with counsel for all parties to discuss how best to proceed and coordinate these matters. [Doc. 209 at 2–3].  Defendants further request that the Court stay the above-styled case, including the consolidated case, pending resolution of West Virginia Attorney General John B.

9

McCuskey's separate lawsuit (hereinafter "AG Action") against defendants on behalf of the State of West Virginia. [Id. at 2, 3–4].

### A. Status Conference Request

First, defendants, pursuant to Federal Rule of Civil Procedure 16, request a status conference with the Court to discuss coordination of the related pending actions. [Id. at 2–3]. Defendants state there are presently three (3) related actions before the Court that raise materially overlapping issues: (1) the above-styled case (hereinafter **Ohio County** Action), (2) **City of Wellsburg v. Express Scripts, Inc. et al**, Civil Action Number 5:25-CV-164 (N.D. W.Va.) (Bailey, J.) action (hereinafter **City of Wellsburg** Action), and (3) the recently filed AG Action. [Id. at 2]. In this case, plaintiffs represented that they act on behalf of the same interests as the Attorney General, asserting that counsel represents the State through its counties and cities. [Id.]. The Attorney General, in turn, asserts standing as *parens patriae* to pursue claims on behalf of the public health and general welfare of the State. [Id.]. Defendants argue that given the overlapping nature of these cases and the need for coordination, a hearing is warranted to discuss how best to proceed. [Id. at 3].

In Response, plaintiffs state:

> Plaintiffs have been litigating this case for more than a year, including the denial of fully briefed motions to dismiss (ECF Nos. 108, 109, 131, 135, 139, 140, and 188), negotiation and entry of orders governing the use and disclosure of confidential information and Electronically Stored Information (ESI) (ECF Nos. 204 and 205), the entry of a comprehensive discovery and

> trial plan which sets a bifurcated trial on Plaintiffs' public nuisance claims in August of 2026 (ECF No. 192), and discovery (ECF Nos. 193, 194, 195, and 215). Over the past 18 months, Plaintiffs' counsel have also been leading the national discovery efforts against Express Scripts in the federal MDL on behalf of political subdivisions which discovery has been incorporated into the record in this case. ECF No. 205.
>
> In stark contrast, in ***State of West Virginia ex rel. McCuskey v. Evernorth Health, Inc., et al.***, No. 5:25-cv-00182-JPB (N.D.W. Va.) (**AG Action**), Express Scripts has not yet been served and anticipated motions to dismiss have not even been filed. (ECF No. 209, at 1.) In the AG Action, the State has asserted multiple theories of liability beyond public nuisance, including claims under the West Virginia Consumer Credit and Protection Act which Plaintiffs in this case have not asserted. AG Action, ECF No. 1, Complaint, at Count Three.

[Doc. 216 at 1–2 (footnote omitted)].

In Reply, defendants argue a status conference should be set for at least six (6) reasons:

> *First*, under West Virginia law, the Attorney General's lawsuit and the interests he represents take primacy over Plaintiffs' claims. *Second*, Plaintiffs concede that, while the Attorney General may have authority to assert *parens patriae* claims, they do not. *Third*, Plaintiffs previously told this Court that the Attorney General adequately represented their interests in

related state-court litigation. *Fourth*, Plaintiffs admit that the current case structure violates Express Scripts' Seventh Amendment jury trial right. *Fifth*, the current case structure was premised on the absence of the Attorney General. *Sixth*, Plaintiffs will suffer no harm or prejudice from the requested hearing and stay, whereas both Express Scripts' and the Attorney General's interests would be harmed by proceeding with the *Ohio County / City of Wellsburg* consolidated cases on the current trajectory.

[Doc. 218 at 2]. Defendants argue a status conference is necessary because the Attorney General's action carries primacy under West Virginia law and materially overlaps with the municipal plaintiffs' cases. [Id. at 2–3]. Municipalities possess only derivative authority to pursue their own interests, while the Attorney General holds broad constitutional and statutory authority to control litigation on behalf of the State and its citizens. [Id. at 3]. Defendants argue the current case management plan was adopted in the absence of the Attorney General as a party, but with the State now pursuing overlapping claims, reconsideration of case management is warranted. [Id. at 4]. Coordinating the cases will promote efficiency, avoid constitutional concerns, and ensure consistent treatment of materially identical claims. [Id. at 5].

The Court finds no good reason or efficiencies to be gained at this time by conducting a status conference to discuss coordination of these cases, given their substantially different procedural postures and differing theories of liability. Thus, defendants request for a status conference [**Doc. 209**] is **DENIED**.

**B.     Stay Request**

Defendants next request that the Court stay the ***Ohio County / City of Wellsburg*** Actions pending resolution of the AG Action.  Defendants argue judicial economy, hardship, and equity weigh in favor of staying the consolidated ***Ohio County / City of Wellsburg*** Actions.  [Id.].  Unlike those actions, which involve 120 separate municipal plaintiffs and create significant administrative and discovery burdens, the AG's Action proceeds with a single plaintiff and avoids many of the complications associated with statewide proceedings.  [Id. at 4].  Defendants argue proceeding with the AG Action would minimize duplicative discovery and conflicting litigation positions while fully representing the same interests the municipal plaintiffs seek to advance.  [Id.].  The ***Ohio County / City of Wellsburg*** plaintiffs will not be prejudiced by a stay, as the AG Action is brought on behalf of the entire State, including their residents.  [Id.].

In Response, plaintiffs argue they assert individual claims under their own statutory authority to abate public nuisances, and the fact that those claims collectively cover most of West Virginia does not transform them into claims brought on behalf of the State. [Doc. 216 at 2].  Plaintiffs further argue the use of aggregate proof is an evidentiary matter, not an issue of standing, and does not convert plaintiffs' claims into a statewide action. [Id. at 2–3].  Moreover, plaintiffs assert the Attorney General cannot settle or release plaintiffs' claims, and thus the contention that the AG Action fully represents their interests is incorrect. [Id. at 3 (citing ***Brooke County Comm'n v. Purdue Pharma***, Civil Action No. 17-C-248, Order Denying Cardinal Health, Inc.'s Motion to Dismiss, at * 5 (Cir. Ct. Marshall County Dec. 28, 2018) (finding the "WVAG did not have the power to bring, let alone

13

release, Plaintiff's nuisance claim"), *writ denied*, **State ex. Rel Cardinal Health, Inc. v. Hummel**, No. 19-0204 (W. Va. 2019))].

In Reply, defendants argue a stay is warranted for the same reasons a status conference is warranted. [Doc. 218 at 5]. Defendants assert a stay of the **Ohio County / City of Wellsburg** consolidated cases is warranted because proceeding with 120 separate municipal plaintiffs would create unnecessary burdens and inefficiencies, while the Attorney General's action—brought by a single plaintiff with authority to represent statewide interests—provides a more efficient vehicle for resolution. [Id.]. Defendants argue discovery in the municipal cases has already proven unmanageable, with plaintiffs refusing to provide information from each municipality, whereas the AG Action will streamline discovery and trial. [Id.]. They also argue plaintiffs will suffer no prejudice from a stay, as those cases remain in their early stages and any abatement relief obtained in the AG Action would benefit their communities. [Id. at 6]. Lastly, they argue allowing both actions to proceed simultaneously would only increase expense, delay, and hardship, while a stay would promote judicial economy and efficiency. [Id. at 7].

Judicial economy, hardship, and equity strongly favor denying defendants' request for a stay. This case already has a trial date, a bifurcated trial plan, and active discovery underway, and a stay would only increase delay, expense, and prejudice while failing to resolve plaintiffs' individual claims. Proceeding under the existing trial plan is therefore the most efficient and equitable path forward. Thus, defendants request for a stay [**Doc. 209**] is **DENIED**.

## III.     Conclusion

Express Scripts Entities' Motion for Reconsideration or in the Alternative to Certify for Interlocutory Review [**Doc. 199**] and Motion and Memorandum of Law in Support of Express Scripts' Requesting a Status Conference and to Stay Proceedings [**Doc. 209**] are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 1, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE