# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Ohio County Commission, *et al.*,

                    Plaintiffs,

v.

Express Scripts, Inc., *et al.*,

                    Defendants.

Case No.: 5:24-CV-142-JPB

Honorable John Preston Bailey

State of West Virginia *ex rel.* John B. McCuskey, Attorney General,

                    Plaintiff,

v.

Evernorth Health, Inc., *et al.*,

                    Defendants.

Case No.: 5:25-CV-182-JPB

Honorable John Preston Bailey

## JOINT STATUS REPORT FOLLOWING SUPERVISED MEET AND CONFER

Pursuant to the instructions provided by the Court's career law clerk Haley Dill at the July 23, 2026 supervised meet-and-confer, *see* ECF No. 366, the Express Scripts Defendants, the West Virginia Department of Human Services (**DoHS**), the West Virginia Office of the Chief Medical Examiner (**OCME**), the West Virginia Bureau for Public Health (**BPH**), the West Virginia Office of Drug Control Policy (**ODCP**) (collectively, **Public Health Agencies**), the West Virginia Attorney General's Office (**AGO**) (collectively, **Agencies**) and the State of West Virginia file this Joint Status Report to memorialize their agreement regarding Express Scripts' subpoenas that are the subject of Express Scripts' motion to compel, the Agencies' motions to quash, and the State's

motion for protective order. *See* ECF Nos. 305–308, 313–315; No. 5:25-CV-182-JPB, ECF No. 69. The parties are filing mutual motions to withdraw their respective motions without prejudice on the basis of the agreement outlined below.

As used herein, "MLP" refers to the West Virginia Mass Litigation Panel and the following cases: *In re Opioid Litigation*, Civil Action No. 19-C-9000 Master Case, Civil Action No. 21-C-9000 MFR, Civil Action No. 21-C-9000 Distributor, Civil Action No. 21-C-9000 PHARM. "CT2" refers to consolidated cases *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362 (S.D.W. Va.) and *Cabell County Commission v. AmerisourceBergen Drug Corp.*, No. 3:17-01665 (S.D.W. Va.).

Reserving all rights and waiving none, the parties have agreed to the following:

**I.      Gap Period (January 1, 2020 — Present)**

A.      The Agencies will respond to Express Scripts' subpoenas in full for the period starting **January 1, 2020** through the present.

1.      Although the State's last production in the MLP is dated October 2022, a review of the Agencies' prior productions that have been reproduced to Express Scripts reveals that most of the documents are dated prior to January 1, 2020. Thus, to avoid duplication to the maximum extent possible while also ensuring completeness, Express Scripts believes the Gap Period should begin on January 1, 2020.

2.      To the extent any Agency contends its productions in the MLP and CT2 that have been reproduced to Express Scripts extended beyond January 1, 2020, the Agency will provide the basis for its belief and supply sufficient detail for Express Scripts to determine whether such documents have been produced to Express Scripts in this litigation.

3.      To the extent previously produced datasets that have been reproduced to Express Scripts do not contain information for periods prior January 1, 2020, or certain documents were not produced because they were not yet available, the Agencies will supplement those datasets and produce those documents despite their preceding January 1, 2020. *See, e.g.*, ECF No. 239-6 (providing datasets with varying date ranges).

4.      To the extent previously produced datasets that have been reproduced to Express Scripts contain information that postdates January 1, 2020, the

2

relevant Agency need not reproduce this data, and may instead supplement the information based on the date of the most recent data entry. *See, e.g., id.*

5.    To the extent the Agencies do not have responsive records from January 1, 2020 through the present, the Agencies will so state in writing and will endeavor to the best of their abilities to explain whether the lack of responsive records may be attributable to the temporal scope of their search and whether they believe responsive records from earlier periods were produced by the Agency in the MLP and/or CT2 and have been reproduced to Express Scripts.

B.    As soon as possible, but no later than **fourteen (14) days** after the filing of this Joint Status Report, the Public Health Agencies will identify documents and data that are no longer housed within each Public Health Agency due to the reorganization that occurred January 1, 2024 as a result of House Bill 2006, or for any other reason. The Public Health Agencies will use best efforts to determine where the information and data is currently produced or retained and convey the information to Express Scripts.

C.    The Agencies may utilize the same reporting methodology used in the MLP and/or CT2 to supplement their prior productions that have been reproduced to Express Scripts, *provided that* the Agencies explain their methodology to Express Scripts and Express Scripts provides its consent, which will not be withheld unreasonably.

1.    This includes, but is not limited to, the datasets described in "Exhibit A to State's Request for Production Responses (9/2/2022)," filed on the docket at ECF No. 239-6, as applicable.

2.    To the extent the Agencies are able to produce the entire dataset, including the supplemented data covering the Gap Period, the Agencies will do so. To the extent they are not able to do so, the Agencies will provide sufficient detail regarding the dataset (such as Bates numbers, titles, dates, etc.) so Express Scripts can verify that they were reproduced to Express Scripts.

3.    For example, OCME has represented that in the MLP or CT2, it compiled relevant information from autopsy reports into a dataset and produced the dataset rather than producing the autopsy reports themselves to ease the burden of redacting large volumes of documents. Provided that OCME explains its methodology to Express Scripts and provides sufficient information for Express Scripts to locate the previously produced dataset, or reproduces the entire dataset supplemented with information from the Gap Period, Express Scripts agrees that OCME need not produce individual autopsy reports from the Gap Period. Express Scripts reserves the right to request additional information from these autopsy reports and the production of specific autopsy reports should they be needed.

D.    Express Scripts will propose search terms to each Agency to aid its search of responsive documents during the Gap Period. The Agencies will produce a hit count for each search term and Express Scripts and the Agencies will negotiate search terms in good faith to reduce the hit count to the extent necessary. Should the Agencies provide the search terms previously used in the MLP and CT2, Express Scripts will consider using similar search terms, supplemented by search terms specific to the subject matter of this litigation .

    1.    To the extent the Agencies' productions in the MLP and CT2 that have been reproduced to Express Scripts relied on searches of custodial records of certain Agency officials, the Agencies may search the custodial records of the same Agency officials and/or their current equivalents, *provided that* the Agencies inform Express Scripts of their intent to do so and inform Express Scripts of any changes to custodians since the Agencies' prior productions. Express Scripts reserves all rights to request additional custodial files or other responsive information as discovery develops.

    2.    Notwithstanding the above, the Agencies will also search reasonably available and searchable databases, document drives, and any other depository where responsive documents may be stored. This includes, but is not limited to, the databases and non-custodial sources described in "Exhibit A to State's Request for Production Responses (9/2/2022)," filed on the docket at ECF No. 239-6, as applicable.

E.    Upon the parties' agreement on search terms, the Agencies will promptly begin their review of documents hitting on those search terms and start a rolling production of responsive documents as soon as possible, prioritizing the most recent and readily accessible documents.

F.    Express Scripts will review the Agencies' productions to identify any documents that Express Scripts expects to find but has not been produced, such as periodical publications or reports. Express Scripts will endeavor to identify these documents with as much specificity as possible.

## II.    Prior Period (1996 — December 31, 2019)

A.    Express Scripts will identify specific document requests in its subpoenas for which it believes no responsive documents were previously produced in the MLP and CT2 and subsequently reproduced to Express Scripts.

    1.    The Agencies will run the relevant agreed-upon search terms for the Gap Period to cover the Prior Period for those requests for which responsive documents were not previously produced and subsequently reproduced to Express Scripts.

    2.    To the extent the Agencies disagree with Express Scripts' assessment of prior productions that were reproduced to Express Scripts, the Agencies will describe with sufficient detail (such as Bates numbers, titles, dates, etc.) the

documents that they previously produced and believe are responsive to Express Scripts' requests.

3.    The parties will work cooperatively and in good faith to resolve any disputes that may arise regarding whether responsive documents to specific requests were previously produced and reproduced to Express Scripts.

B.    Express Scripts will propose to each Agency narrow, targeted, subject-matter-specific search terms to aid the Agencies' search for responsive documents that were not reproduced to Express Scripts. Express Scripts will exclude search terms similar to those used in the MLP and CT2 should the Agencies provide the search terms previously used by them.

1.    The Agencies will produce a hit count for each search term for the entire Prior Period and Express Scripts and the Agencies will negotiate search terms in good faith to reduce the hit count to the extent necessary.

2.    Upon the parties' agreement on search terms, the Agencies will promptly begin their review of documents hitting on those search terms and start rolling productions of responsive documents as soon as possible.

C.    Express Scripts will identify on a rolling basis and with as much detail as possible specific responsive documents or categories of documents that were not previously produced and/or reproduced to Express Scripts but that Express Scripts has reason to believe exist. For example, based on an initial review, Express Scripts believes that certain historical productions of certain Agencies contain material gaps concerning PBM-specific issues that were not a focus of the MLP or CT2. Express Scripts will endeavor to identify these and other documents expeditiously as possible and in a manner that is minimally burdensome to the Agencies.

1.    To the extent the Agencies believe these documents were previously produced and reproduced to Express Scripts, the Agencies will provide sufficient detail (such as Bates numbers, titles, dates, etc.) to Express Scripts so that Express Scripts can verify whether they were reproduced to Express Scripts.

2.    To the extent the Agencies determine, following a good-faith search of their records, that the specific documents Express Scripts seek do not exist or cannot be located, the Agencies will so state in writing.

D.    Should Express Scripts identify at any time documents previously produced by the Agencies in either the MLP or CT2 that Express Scripts is unable to locate following a diligent search, the Agencies agree to reproduce the documents.

E.    To the extent the Agencies encounter technological or logistical difficulties in searching for the entire Prior Period, the Agencies and Express Scripts will work cooperatively and in good faith to resolve these difficulties. The Agencies will inform Express Scripts of these difficulties as soon as practicable.

## III.    General Agreements

A.    With respect to each of the points above, whenever the Agencies provide information to Express Scripts to locate documents, they shall use best efforts to describe said documents *in the manner in which they were produced* to Express Scripts.

    1.    Best efforts includes, but is not limited to, consulting the AGO, outside counsel during the MLP, and counsel to the *Ohio County* Plaintiffs to understand if, when, and how the documents were produced in the MLP and subsequently reproduced to Express Scripts.

    2.    To the best of Express Scripts' knowledge, the Agencies prior productions from CT2 *have not* been reproduced to Express Scripts *unless* they were also produced in the MLP. Thus, the Agencies understand that Express Scripts' ability to locate documents is limited to the manner in which they were reproduced to Express Scripts.

B.    With respect to each of the points above, the Agencies and Express Scripts agree to work cooperatively to minimize the burden and expense for all parties while ensuring complete, accurate, and timely productions in response to Express Scripts' requests.


Dated: August 7, 2026

**JOHN B. MCCUSKEY**
**ATTORNEY GENERAL OF WEST**
**VIRGINIA**


By: *DRAFT*
Jace H. Goins (WVSB #6894)
 *Chief Deputy Attorney General*
Abby Cunningham (WVSB #13388)
 *Assistant Attorney General*

Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Jace.H.Goins@wvago.gov
Abby.G.Cunningham@wvago.gov

*Counsel for the Office of the West Virginia Attorney General*

Respectfully Submitted,

By: *DRAFT*
William J. Ihlenfeld (WV Bar No. 7465)
Maximillian F. Nogay (WV Bar No. 13445)
**MAVERICK LITIGATION**
Post Office Box 613
Morgantown, WV 26507
wji@maverickwv.com
max@maverickwv.com
Tel: (304) 322-6625
Fax: (304) 906-2560

Charles R. Bailey (WV Bar #202)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: (304) 345-4222
F: (304) 343-3133
cbailey@baileywyant.com

6

**HISSAM FORMAN DONOVAN RITCHIE PLLC**
Ryan McCune Donovan (WVSB #11660)
Michael B. Hissam (WVSB#11526)
700 Virginia St. East, Suite 210
Charleston, WV 25301
Telephone: (681) 26-3802
rdonovan@hfdrlaw.com
mhissam@hfdrlaw.com

*Special Assistant Attorneys General*
*For the State of West Virginia*

**WEST VIRGINIA DEPARTMENT OF HEALTH AND THE WV OFFICE OF THE CHIEF MEDICAL EXAMINER**

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES AND THE WV OFFICE OF DRUG CONTROL POLICY**

By Counsel:

By: _DRAFT_____
Steven R. Compton (WVSB #6562)
*Deputy Attorney General*
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301
Telephone: 304-558-2131
steven.r.compton@wvago.gov

Justin C. Taylor
Senior Trial Counsel
LITCHFIELD CAVO LLP
8 Capitol Street
Terminal Building - 4th Floor
Charleston, WV 25301
(304) 833-9958
TaylorJ@LitchfieldCavo.com

Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Patrick King (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
700 Louisiana St., Suite 3900
Houston, TX 77002
(713) 221-7000
patrickking@quinnemanuel.com

Elisabeth Miller (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on this 7th day of August, I served the foregoing document on all counsel of record via the Court's Electronic Case Filing (ECF) system.

DATED August 7, 2026.

*/s/*

William J. Ihlenfeld II